UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **CV 21-6841 JGB (SPx)** | Date | September 10, 2021 |
| Title | *Breonnah Fitzpatrick v. City of Los Angeles, et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   Order GRANTING Plaintiff's Ex Parte Application for a Temporary Restraining Order (Dkt. No. 15) (IN CHAMBERS)

Before the Court is Plaintiff's ex parte application for temporary restraining order and order to show cause why a preliminary injunction should not issue. ("Application," Dkt. No. 15.) After considering the papers filed, the Court GRANTS the Application.

## I. BACKGROUND

On August 25, 2021, Plaintiff Breonnah Fitzpatrick filed a complaint against Defendants City of Los Angeles, City of Los Angeles Department of Transportation, Hanks Wilshire Tow, Inc., Bridgecrest Acceptance Corporation ("Bridgecrest"), and individuals Seleta Reynolds and Brian Alan Hale. ("Complaint," Dkt. No. 1.) The case was transferred to the Court because it is related to another case, Brewster v. City of Los Angeles.

This is a putative class action. The Complaint alleges three causes of action brought pursuant to 42 U.S.C. § 1983: (1) Injunctive relief, also brought under Article I, section 13 of the California Constitution; (2) Violations of the Fourth Amendment; and (3) Unlawful takings in violation of the Fifth Amendment. (Complaint.)

Plaintiff filed the Application on September 1, 2021. In support of the Application, Plaintiff submitted declarations from Donald W. Cook and Breonnah Fitzpatrick. ("Cook Declaration," Dkt. No. 15-1; "Fitzpatrick Declaration," Dkt. No. 15-2.) Plaintiff also filed proof of service on all Defendants. (Dkt. Nos. 16, 17.)

On September 7, 2021, the Court ordered Defendants to file an oppositions or a notice of non-opposition to the Application by September 8, 2021. (Dkt. No. 18.) Defendant City of Los Angeles filed a notice of non-opposition. (Dkt. No. 21.) Plaintiff's counsel filed a declaration attesting to a conversation with counsel for Defendant Bridgecrest in which counsel stated that Bridgecrest will not seek to repossess Plaintiff's vehicle before a hearing on the preliminary injunction motion. (Dkt. No. 19.)

## II. FACTS

Plaintiff alleges the following facts in the Complaint:

The City of Los Angeles has a policy called the "Unpaid Parking Tickets Vehicle Seizure Policy," or "VSP." (Complaint ¶ 13.) Under the VSP, if vehicle owners accrue unpaid parking tickets, City or Los Angeles Department of Transportation ("LADOT") officials may direct their vehicles to be seized without a warrant until they pay said unpaid parking tickets. (Id.) The VSP directs City and/or LADOT officials to seize vehicles by one of two methods: (a) by affixing a "boot," a locking metal clamp, on one of a vehicle's wheel to immobilize the vehicle, or (b) directing that the vehicle be towed and impounded in a vehicle impound lot. (Id.) Pursuant to the VSP, Defendants bar a vehicle's registered owner from reclaiming her vehicle until she pays all of her unpaid parking tickets. (Id. ¶ 14.) Pursuant to the VSP, if Defendants seize a vehicle by having it towed and storing it in a lot, vehicle owners accrue daily storage charges during the storage period which must be paid in full before a vehicle will be released. (Id. ¶ 15.) If these charges are not paid, the vehicle is sold at a lien sale to satisfy the unpaid towing and storage charges, as well as other related charge fees. (Id.; see also Cal. Veh. Code §22851(a).)

On August 11, 2021, Plaintiff's 2013 Toyota Yaris was towed by Defendants, who were acting pursuant to the VSP. (Id. ¶ 16.) At the time the vehicle was towed, it was "lawfully parked at a safe and legal location on the residential street Rosewood Avenue, around the corner from Plaintiff's residence on North Ardmore, in the City of Los Angeles (Koreatown area)." (Id.) Plaintiff's vehicle was taken to a lot owned and operated by S & J Wilshire, which contracts with the City. (Id.)

Plaintiff does not have the money to pay her unpaid parking tickets or pay the fines accruing because her vehicle has been seized. (Id. ¶ 17.) The Toyota Yaris is Plaintiff's only vehicle, which she needs for school, medical appointments, and work. (Id. ¶ 18.) Because Plaintiff cannot pay the fines owed, pursuant to Cal. Veh. Code § 22851(a) S & J Wilshire will sell Plaintiff's vehicle at a lien sale in order to collects funds due it for towing and storage. (Id.)

## III. LEGAL STANDARD

A temporary restraining order ("TRO") preserves the status quo and prevents irreparable harm until a hearing may be held on the propriety of a preliminary injunction. See Reno Air Racing Ass'n, Inc. v. McCord, 452 F.3d 1126, 1131 (9th Cir. 2006). The standard for issuing a

TRO is identical to the standard for issuing a preliminary injunction. Lockhead Missile & Space Co. v. Hughes Aircraft Co., 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

"A preliminary injunction is an extraordinary and drastic remedy; it is never awarded as of right." Munaf v. Geren, 553 U.S. 674, 689 (2008) (citations omitted). An injunction is binding only on parties to the action, their officers, agents, servants, employees, and attorneys and those "in active concert or participation" with them. Fed. R. Civ. P. 65(d)(2).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). In the Ninth Circuit, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotations omitted).

When seeking a temporary restraining order through an ex parte application, a plaintiff must further show that he is without fault in creating the crisis necessitating the bypass of regular motion procedures. See Mission Power Eng'g Co. v. Cont'l Gas Co., 883 F. Supp. 488, 492–93 (C.D. Cal. 1995). The propriety of a temporary restraining order, in particular, hinges on a significant threat of irreparable injury, Simula, Inc. Autoliv, Inc., 175 F.3d 716, 725 (9th Cir. 1999), that must be imminent in nature, Caribbean Marine Serv. Co. v. Baldridge, 844 F.2d 668, 674 (9th Cir. 1988). The Ninth Circuit has cautioned that there are very few circumstances justifying the issuance of an ex parte temporary restraining order. Reno Air Racing Assoc., Inc., 452 F.3d at 1131.

### IV.  DISCUSSION

Plaintiff requests the Court enjoin the lien sale of her vehicle and issue an order to show cause as to why a preliminary injunction ordering the return of her vehicle should not issue. (Motion.)  As described below, the Court finds that the Winter factors support issuance of a TRO.

**A.  Likelihood of Success on the Merits**

Perhaps because Plaintiff's takings claim depends upon her unlawful seizure claim, Plaintiff makes no arguments regarding takings in the Application. See Am. Sav. & Loan Ass'n v. Marin Cty., 653 F.2d 364, 368 (9th Cir. 1981) (property seized pursuant to a valid exercise of the police power does not violate the Takings Clause). Accordingly, the Court assess the merits of Plaintiff's unlawful seizure claim only.

The Court finds that Plaintiff is likely to succeed on the merits of her Fourth Amendment claims under Miranda v. City of Cornelius, 429 F.3d 858, 862 (9th Cir. 2005). The facts of

Miranda are as follows: Mr. Miranda was a licensed driver; his wife Mrs. Miranda was not. Mr. Miranda was teaching Mrs. Miranda to drive on the street in front of their home when they were stopped by a police officer. Because they were in front of their home, Mrs. Miranda parked the Mirandas' car in the driveway of their home during the stop. The police officer cited Mrs. Miranda for operating a vehicle without a license and Mr. Miranda for permitting the operation of a vehicle by an unlicensed driver. The officer informed the Mirandas that their vehicle would be impounded pursuant to an Oregon law which allowed officers to tow a vehicle with prior notice if that officer has a reasonable belief that a driver is operating without a license. 429 F.3d at 862. The Mirandas brought suit under section 1983 arguing that the impound of their vehicle was an unreasonable seizure under the Fourth Amendment and that they were deprived of due process under the Fourteenth Amendment. Id.

On appeal of summary judgment granted to defendants, the Ninth Circuit reversed, finding that the impoundment of the Mirandas' vehicle "must be considered an unreasonable seizure" because it "did not satisfy any acceptable purpose under the community caretaking doctrine." Miranda v. City of Cornelius, 429 F.3d 858, 869 (9th Cir. 2005). The court of appeals ordered the district court to consider on remand whether defendants had "evidence of a legitimate government purpose for the impoundment sufficient to render the seizure reasonable[.]" Id.

This holding is consistent with other controlling Fourth Amendment jurisprudence. Towing a vehicle away from its owner is a seizure, and "[a] seizure conducted without a warrant is per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions. The burden is on the Government to persuade the district court that a seizure comes under one of a few specifically established exceptions to the warrant requirement." United States v. Hawkins, 249 F.3d 867, 872 (9th Cir. 2001).

The exception at issue in Miranda—and also here—was and is the "community caretaking" exception to the warrant requirement. Under this exception, law enforcement officers may take vehicles into police custody for reasons of community caretaking and safety. South Dakota v. Opperman, 428 U.S. 364, 369 (1976). The exception permits the government to "remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic." Opperman, 428 U.S. at 369. Police may exercise discretion in using the community caretaking exception to the warrant requirement "so long as that discretion is exercised according to standard criteria and on the basis of something other than suspicion of evidence of criminal activity." Colorado v. Bertine, 479 U.S. 367, 375 (1987).

In the Ninth Circuit, whether a vehicle impoundment is warranted under the community caretaking doctrine depends on the location of the vehicle and police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft. See United States v. Jensen, 425 F.3d 698, 706 (9th Cir. 2005); see also Hallstrom v. City of Garden City, 991 F.2d 1473, 1477, n. 4 (9th Cir. 1993) (impoundment of arrestee's car from private parking lot "to protect the car from vandalism or theft" was reasonable under the community caretaking

function); United States v. Caseres, 533 F.3d 1064, 1075 (9th Cir. 2008) ("There was no community caretaking rationale for the impoundment of Caseres's car. The car was legally parked at the curb of a residential street . . . The government has not presented any evidence that the car was blocking a driveway or crosswalk, or that it posed a hazard or impediment to other traffic.")

Because the Mirandas' vehicle was lawfully and safely parked in the driveway of their home at the time it was seized, the community caretaking exception to the warrant requirement did not apply. 429 F.3d at 864. In reaching this conclusion, the Miranda panel explained that the "reasonableness of an impoundment under the community caretaking function does not depend on whether the officer had probable cause to believe that there was a traffic violation, but on whether the impoundment fits within the 'authority of police to seize and remove from the streets vehicles impeding traffic or threatening public safety and convenience[.]' " Id. (quoting Opperman, 428 U.S. at 369).

The facts are virtually the same here. Though Plaintiff admits that she has a significant number of unpaid parking tickets, she is likely to succeed in showing that her car was lawfully parked at the moment it was towed. (See Fitzpatrick Declaration.) And it is the law of this circuit that there are no public safety concerns which arise when a driver lawfully parks her vehicle in a place the vehicle is allowed to be parked, and that driver is able to move the vehicle if necessary. Caseres, 533 F.3d at 1075.

### B. Irreparable Harm

Plaintiff has also established that there is a likelihood of irreparable injury absent the issuance of the TRO. Alliance for Wild Rockies v. Cottrell, 632 F.3d 1127, 1135 (9th Cir. 2011). The deprivation of constitutional rights 'unquestionably constitutes irreparable injury.' " Melendres v. Arpaio, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting Elrod v. Burns, 427 U.S. 347, 373 (1976)). And Plaintiff has demonstrated a strong likelihood of success on the claim that her constitutional rights are being continuously violated every day her vehicle is seized. (Application 19-20.) This argument is bolstered by the fact that a person's "private interest in the uninterrupted use of an automobile is substantial." Stypmann v. City & Cty. of San Francisco, 557 F.2d 1338, 1343 (9th Cir. 1977). Plaintiff's "ability to make a living" and her "access to both the necessities and amenities of life may depend upon the availability of an automobile when needed." 557 F.2d at 1342-43. If Plaintiff loses her car, she is at risk of unemployment, cut off access to medical care, and a myriad of other adverse consequences.

### C. Balance of Equities and Public Interest

When, as here, the Government is a party to a suit, the equities and public interest merge. E. Bay Sanctuary Covenant v. Biden, 993 F.3d 640, 668 (9th Cir. 2021). The Court finds both balance of the equities and the public interest supports issuance of a TRO.

Plaintiff's request is a modest continuation of the status quo: She wants her car not to be sold. This has a negligible impact on Defendants but a meaningful impact on Plaintiff. Indeed, no Defendant opposes issuance of this TRO. (See Dkt. Nos. 19-21.) The public interest supports injunctive relief.

**D. Bond**

Plaintiff also requests the Court waive payment of bond. (Application 21.) Though Federal Rule of Civil Procedure 65(c) ordinarily requires a moving party post bond as a condition of preliminary injunction, the Court has discretion to waive this requirement. See Johnson v. Couturier, 572 F.3d 1067, 1086 (9th Cir. 2009).

The Court will not waive bond completely. The parties are directed to include argument in subsequent briefs as to appropriate bond if the Court issues a preliminary injunction ordering Defendants to release Plaintiff's vehicle.

## V.   CONCLUSION

For the reasons above, the Court GRANTS Plaintiff's Application. The Court sets an order to show cause hearing on **September 27, 2021, at 9:00 a.m.**, as to why a preliminary injunction should not issue commanding defendants City of Los Angeles ("City") and City of Los Angeles Department of Transportation("LADOT") to direct the release of Plaintiff's 2013 Toyota Yaris vehicle (license no. 8AAZ781) to her.

Pending the **September 27, 2021** hearing, Defendants are precluded from effecting a lien sale of the 2013 Toyota Yaris, and Defendant Bridgecrest Acceptance Corporation is precluded from taking possession of the aforementioned Toyota pursuant to § 22651(i)(4)(C).

Defendants' opposition to issuance of a preliminary injunction, if any, shall be filed by **September 17, 2021**. Plaintiff's reply, if any, shall be filed by **September 21, 2021.**

**IT IS SO ORDERED.**