**DONALD W. COOK**, CSB 116666
ATTORNEY AT LAW
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
(213) 252-9444 / (213) 252-0091 facsimile
E-mail: manncooklaw@gmail.com

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BREONNAH FITZPATRICK, CHRISTOPHER OFFICER and TIMOTHY McCARTY, individuals and as class representatives,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES, a municipal corporation; CITY OF LOS ANGELES DEPARTMENT OF TRANSPORTATION, a public entity; LOS ANGELES POLICE DEPARTMENT, a public entity; GENERAL MANAGER SELETA REYNOLDS, an individual; BRIAN HALE, CHIEF - PARKING ENFORCEMENT & TRAFFIC CONTROL; individually and in their official capacities; and DOES 1 through 10, in their individual and official capacities,<br><br>Defendants. | Case No. 2:21-cv-6841 JGB (SPx)<br><br>**SECOND AMENDED CLASS ACTION CIVIL RIGHTS COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES**<br><br>1. Injunctive Relief (42 U.S.C. § 1983 / Art. I § 13 Cal. Const.)<br><br>2. Damages (Fourth Amendment / 42 U.S.C. § 1983)<br><br>3. Damages Unlawful Takings (42 U.S.C. § 1983 / Fifth Amendment)<br><br>4. Violation of Cal. Civil Code §52.1<br><br>5. Violation of Cal. Constitution, Art. I §13<br><br>6. Violation of Due Process & Equal Protection / 42 U.S.C. § 1983<br><br><u>DEMAND FOR JURY TRIAL</u> |

**I.     JURISDICTION**

1. Plaintiffs' claims arise under 42 U.S.C. §1983 and state law. Accordingly, federal jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1343. The

Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

2. Plaintiffs' claims arise out of, *inter alia*, acts of the City of Los Angeles, Los Angeles Police Department, and the City of Los Angeles Department of Transportation, acts which occurred in the City of Los Angeles. Accordingly, venue is proper within the Central District of California.

## II.    PARTIES.

3. Plaintiffs Breonnah Fitzpatrick ("Fitzpatrick"), Christopher Officer and Timothy McCarty ("McCarty") are individuals and are the Plaintiffs. Plaintiffs live and work in the City of Los Angeles.

4. Defendant City of Los Angeles ("City") is a municipal corporation organized and existing under the laws of the State of California. Defendants City of Los Angeles Department of Transportation ("LADOT") and Los Angeles Police Department ("LAPD") are each a public entity within the meaning of California law, and each are a City agency.

5. Plaintiffs are informed and believe and based thereon allege that defendant Seleta Reynolds ("Reynolds"), an individual, is the General Manager of LADOT, and a policy maker for LADOT within the meaning of 42 U.S.C. § 1983.

6. Plaintiffs are informed and believe and based thereon allege that defendant Brian Hale ("Hale""), an individual, is the Chief - Parking Enforcement and Traffic Control for LADOT, and a policy maker for LADOT within the meaning of 42 U.S.C. § 1983.

7. Plaintiffs are informed and believe and based thereon allege that *FORMER* defendant Hanks Wilshire Tow, Inc., dba S & J Wilshire Tow ("S & J Wilshire"), Viertel's Automotive Service, Inc., dba Viertel's - Northeast Division, Area 11 ("Viertel's"), and Ross Baker Towing, Inc. ("Ross Baker"), are each California corporations. Plaintiffs are informed and believe and based thereon allege that pursuant to contracts with defendant City, S & J Wilshire, Viertel's and Ross Baker tow and store

vehicles at the direction of City / LADOT / LAPD officials.[1] On account of their contractual relationship with the City, each of these towing and vehicle storage companies are also known generically as a City of Los Angeles "Official Police Garage" or "OPG."

8. *NOT* a defendant is Official Police Garage - Los Angeles ("OPG-LA"), a non-profit corporation (28 U.S.C. § 501(c)(4)). OPG-LA's members and owners are the 18 Official Police Garages ("OPGs") under contract with the City. S & J Wilshire, Viertel's and Ross Baker are three of the members and owners of OPG-LA. OPG-LA handles much of the reporting and record keeping duties on behalf of its member OPGs that the City requires per the OPGs' contracts.

9. Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES, and therefore sue these defendants by fictitious names. Plaintiffs will give notice of their true names and capacities when ascertained. Plaintiffs are informed and believe and thereon allege that defendant DOES are responsible in some manner for the damages and injuries hereinafter complained of.

10. Plaintiffs are informed and believe and thereupon allege that at all times relevant herein defendants, including DOE defendants, and each of them, were the agents, servants, couriers and employees of other defendants, and were acting in concert with each other and in furtherance of a common goal and/or objective, were acting within the course and scope of the agency and employment or ostensible agency and employment.

11. The complained of acts and omissions were performed by persons within the course and scope of employment with their employers, City and/or LADOT and/or LAPD. All acts and omissions were under color of state law.

12. Each Plaintiff timely submitted to the State of California a claim for damages

---

[1] S & J Wilshire and Bridgecrest Acceptance Corporation were named as defendants in the original complaint. However, the claims against them have since been dismissed and they are no longer defendants.

under Cal. Gov't Code § 910.

## III. FACTS COMMON TO ALL CLAIMS

A. *Defendants' "Unpaid Parking Tickets Vehicle Seizure Policy."*

13. Plaintiffs are informed and believe and based thereon allege that defendants City, LADOT, LAPD, Reynolds and/or Hale have promulgated, promoted and/or sanctioned, a policy, practice or custom, hereinafter called "Unpaid Parking Tickets Vehicle Seizure Policy," or "VSP" for short. Under the VSP, a City or LADOT or LAPD official directs or causes a vehicle to be seized *without a warrant* in order to coerce the vehicle's registered owner to pay all amounts allegedly due the City for unpaid parking tickets. The VSP directs City / LADOT / LAPD officials to effect the seizure by one of two methods: (a) by affixing a "boot," a locking metal clamp on the vehicle's wheel to immobilize the vehicle, or (b) directing that the vehicle be towed from the street and impounded in a vehicle impound lot maintained by an OPG, working under contract with the City.

14. Pursuant to the VSP, defendants bar the vehicle's registered owner from reclaiming possession of their vehicle unless and until the owner pays all amounts allegedly due the City for unpaid parking tickets. Pursuant to the VSP, the City / LADOT / LAPD does *not* seek judicial review of any type to justify either the initial seizure, or the ongoing seizure. Pursuant to the VSP, a vehicle is subject to seizure for unpaid parking tickets even though it is safely parked in a lawful location, poses no danger and does not constitute a traffic hazard.

15. If under the VSP, the City / LADOT / LAPD elects to seize the vehicle by having it towed and impounded in an OPG vehicle storage lot, during the period of vehicle storage the OPG is charging daily storage charges (in addition to the towing and administrative fees) which, per the VSP, must be paid in full before the vehicle will be released. If not paid, the OPG will sell the vehicle at a lien sale to satisfy the unpaid towing, storage charges and other related charges and fees. *See* Cal. Veh. Code §22851(a) (Lien created in favor of the tow company for towing and storage charges.).

If the amount recovered by the lien sale is insufficient to pay outstanding charges and fees, the vehicle's (former) registered owner remains liable to the OPG for the difference.

B. *The Seizure Of Plaintiff Fitzpatrick's Vehicle*.

16. On or about August 11, 2021, Plaintiff Fitzpatrick was (and still is) the registered owner of a 2013 Toyota Yaris (blue), license number 8AAZ781. On August 11, 2021, Plaintiff's vehicle was parked at a safe location on the residential street Rosewood Avenue, around the corner from Plaintiff's residence on North Ardmore, in the City of Los Angeles (Koreatown area). Some time during that day, *without a warrant* City / LADOT officials, acting pursuant to the VSP, directed that S & J Wilshire, tow and impound the vehicle, citing Cal. Veh. Code § 22651(i). In compliance with its contract with the City, S & J Wilshire took possession of Plaintiff's vehicle, towing and storing it in its storage lot as a vehicle impound subject to a City / LADOT hold.

17. When defendants had Plaintiff Fitzpatrick's vehicle towed, the towing was not necessary to prevent the immediate and continued unlawful operation of the vehicle such as by an unlicensed driver driving the vehicle. Furthermore, the vehicle:

    A. was not impeding traffic or jeopardizing public safety and convenience;

    B. was not blocking a driveway or crosswalk or otherwise preventing the efficient movement of traffic; and

    C. was parked at a location where it was not creating a public safety hazard, nor was it a target for vandalism or theft.

18. After the August 11 impound, Plaintiff had been pleading with City / LADOT officials to release her vehicle but to no avail. Both before and after the August 11 impound, Plaintiff had explained to City / LADOT officials why she has unpaid parking tickets -- because of her illness in the last year (which required that she be hospitalized) her Toyota was ticketed repeatedly. Plaintiff was unable to pay the tickets because at times she was not working on account of COVID and her medical condition. Despite

explaining this to City / LADOT officials and presenting proof of her medical disabilities, officials refused to grant her any relief. Officials also were refusing to release her vehicle from the impound unless and until she paid the outstanding amounts the City demanded for the parking tickets.

19. After issuance of this Court's September 10, 2021 Order (ECF 22) defendant City of Los Angeles directed the release of Plaintiff Fitzpatrick's vehicle without requiring payment of fees or charges prior to the vehicle's release. On Friday, September 17, 2021, Plaintiff retrieved and took possession of her vehicle.

B. *The Seizure Of Plaintiff Officer's Vehicle*.

20. On January 21, 2022, Plaintiff Officer's 2019 Nissan Rogue of which he is the sole owner (registered – there is no legal owner) was parked at a safe location on Micheltorena just north of Sunset in Echo Park (zip code 90026). The car was parked a few blocks from Plaintiff's apartment. Sometime in the morning of January 21, *without a warrant* the LADOT directed that OPG Viertels tow and impound Plaintiff's Nissan for unpaid parking tickets (C.V.C. § 22651(i) was the cited storage authority).

21. When defendants had Plaintiff Officer's vehicle towed, the towing was not necessary to prevent the immediate and continued unlawful operation of the vehicle such as by an unlicensed driver driving the vehicle. Furthermore, the vehicle:

    A. was not impeding traffic or jeopardizing public safety and convenience;

    B. was not blocking a driveway or crosswalk or otherwise preventing the efficient movement of traffic; and

    C. was parked at a location where it was not creating a public safety hazard, nor was it a target for vandalism or theft.

22. While Plaintiff Officer's Nissan was still in the possession of OPG Viertel's, Plaintiff Officer, a validly-licensed driver had requested defendants to release the Nissan. Defendants initially refused to do so unless and until Plaintiff paid the City what Defendants claimed Plaintiff owed in allegedly unpaid parking citations. Viertel's initially had informed Plaintiff Officer it would not release the vehicle to Plaintiff

unless and until (a) defendants released the hold on the vehicle and (b) Plaintiff paid Vietel's its towing and storage charges (at that time about $1,800 and increasing every day by about $45).

23. Upon request from Plaintiff's counsel, defendant City of Los Angeles directed the release of Plaintiff Officer's vehicle without requiring payment of fees or charges prior to the vehicle's release. On Wednesday, February 23, 2022, Plaintiff Officer retrieved and took possession of his vehicle.

C. *The Seizure Of Plaintiff McCarty's Vehicle*.

24. On January 15, 2022, Plaintiff McCarty's 2005 Dodge Strada was parked in a safe location on Comanche Avenue north of Nordhoff and obviously not a traffic hazard. The car was parked in front of his RV and he was working on his car. Shortly before 2:00 p.m., LAPD officers pulled up. Plaintiff informed the officers he was the car's owner and was a licensed driver. Plaintiff is informed and believes and based thereon alleges that the officers learned Plaintiff's vehicle had more than five unpaid parking citations and the vehicle did not have current registration because the LADOT had put a hold on the registration on account of the unpaid parking citations.

25. When the officers told Plaintiff McCarty they were intending to seize and impound Plaintiff's vehicle because the vehicle did not have current registration, Plaintiff told the officers he was enrolled in the LADOT's CAPP program and was just a few days from completing the program. CAPP is the City's Community Assistance Parking Program that sometimes allows people to pay for citations in the form of community service. Plaintiff further told the officers that upon completing the CAPP program, the LADOT would release the DMV hold on the Dodge's vehicle registration thereby enabling Mr. McCarty to secure current registration stickers (Plaintiff had already paid the DMV fees). One of the officers stated he knew nothing about CAPP and didn't care.

26. Thereafter, in the absence of any warrant the officers directed OPG Ross Baker tow and impound the car for not having current registration (C.V.C. § 22651(o)).

00149422.WPD

The officers' decision to impound, although pursuant to the City's VSP, violated the LAPD Manual (4/222.05) in that:

  A. Plaintiff McCarty was present, was a validly licensed driver competent to lawfully and safely drive his Dodge;

  B. The officers knew the vehicle was not impeding traffic or jeopardizing public safety and convenience;

  C. The officers knew the vehicle was not blocking a driveway or crosswalk or otherwise preventing the efficient movement of traffic; and

  D. The officers knew the vehicle was parked at a location where it was not creating a public safety hazard, nor was it a target for vandalism or theft.

27. While Plaintiff McCarty's Dodge was still in the possession of OPG Ross Baker, Plaintiff McCarty, a validly-licensed driver had requested defendants to release the Dodge. Defendants initially refused to do so unless and until Plaintiff completed the LADOT's CAPP program. Ross Baker initially had informed Plaintiff McCarty it would not release the vehicle to Plaintiff unless and until (a) defendants released the hold on the vehicle and (b) Plaintiff paid Ross Baker its towing and storage charges (at that time about $1,600 and increasing every day by about $45).

28. Upon request from Plaintiff's counsel, defendant City of Los Angeles directed the release of Plaintiff Officer's vehicle without requiring payment of fees or charges, or the CAPP program completion, prior to the vehicle's release. On Wednesday, February 23, 2022, Plaintiff Officer retrieved and took possession of his vehicle.

29. Plaintiffs are further informed and believe and based thereon allege that pursuant to the VSP, defendants refuse to consider the ability of any of the Plaintiffs to pay the accumulated charges for allegedly unpaid parking citations that form the basis for defendants' decision to place a DMV hold on each Plaintiff's vehicle registration, and similarly refuse to consider their ability to pay the accumulating storage fees. Plaintiffs are informed and believe and based thereon allege that each defendant knows that by refusing to consider a vehicle owner's ability to pay the allegedly unpaid

outstanding parking citations and the storage fees for the owner's vehicle currently being held in an OPG at the City's command, vehicle owners like the Plaintiffs will likely lose their respective vehicles at OPG-conducted lien sales.

**IV. CLASS ACTION ALLEGATIONS – PLAINTIFFS' CLASSES.**

30. Plaintiffs bring this action on their own behalf, and on behalf of the class of all persons similarly situated, pursuant to Rule 23, Federal Rules of Civil Procedure.

31. There is an "Injunctive Relief Class" as defined under Rule 23(b)(2) to include all registered owners whose vehicles are presently seized or subject to seizure pursuant to the City / LADOT's Vehicle Seizure Policy, or who may in the future have their vehicles so seized/impounded. This class seeks an injunction commanding defendant City, LADOT, Reynolds and Hale, and each of them, to immediately release vehicles not held pursuant to a warrant, to either the vehicle's registered owner or to a licensed driver designed by the registered owner who can drive the vehicle lawfully. Plaintiffs are the proposed Class Representatives for the Injunctive Relief Class.

32. There is a "Damages Class" as defined by Rule 23(b)(3), consisting of those vehicle owners whose vehicles were seized at any time within the last two years of the original Complaint's filing and continuing up through the present, where such seizures were pursuant and impounded pursuant to the City / LADOT's Vehicle Seizure Policy. Plaintiffs are the proposed Class Representatives for the Damages Class.

33. On information and belief, the Injunctive Relief Class numbers at least in the hundreds while the Damages Class numbers in the thousands. The members of the classes are so numerous that joinder is impracticable.

34. The classes are ascertainable because the LADOT and non-party OPG-LA maintain paper and computer records tracking and identifying every vehicle seized under the VSP, including the registered owner (name and address), vehicle description, date and location where the vehicle was seized, where the vehicle is being held, the authority under which the vehicle is seized, the date the vehicle was released, whether it was sold at a lien sale and for how much, and the amounts paid for administrative

fees, towing and storage charges, and who paid these charges.

35. Questions of law and fact common to each class include:

    A. Whether the VSP is constitutional, under either the Fourth Amendment (unlawful seizure without a warrant), and the Fifth Amendment (Takings without compensation) and the Fourteenth Amendment (due process / equal protection).

    B. Whether the VSP violates the Fourth Amendment by directing and imposing vehicle impounds without a warrant and in the absence of justification for the warrantless seizures.

36. Plaintiffs' claims are typical of the claims of members of each class on whose behalf they act as class representatives, in that as with each class member, each Plaintiff's vehicle was seized without a warrant and pursuant to the VSP. As with each class member, each Plaintiff was willing and able to safely and lawfully reclaim possession of their respective vehicle but for the VSP mandatory requirement that the Plaintiff first pay all sums allegedly due the City for unpaid parking tickets.

37. Plaintiffs will fairly and adequately protect the interests of each class on whose behalf they are acting as class representatives. Plaintiffs have no interest which is now or may be potentially antagonistic to the interests of each class on whose behalf each Plaintiff is acting as a class representative. As with all class members, Plaintiffs' vehicles were seized without a warrant and impounded pursuant to the VSP. As with all class members, each Plaintiff sought to reclaim possession of their vehicle immediately. The attorney representing the Plaintiffs is an experienced civil rights attorney, and is considered an able practitioner in federal constitutional and statutory adjudications.

38. In accordance with Fed.R.Civ.P. Rule 23(b)(1)(A), prosecutions of separate actions by individual members of each class would create a risk of inconsistent or varying adjudications with respect to individual members of the class and would establish incompatible standards of conduct for the parties opposing the class.

39. In accordance with Fed.R.Civ.P. Rule 23(b)(1)(B), prosecutions of separate actions by individual members of the class would create a risk of adjudications with

respect to individual members of the class which would, as a practical matter, substantially impair or impede the interests of the other members of the class to protect their interests.

40. The Damages Class qualifies for certification pursuant to the provisions of Fed.R.Civ.P. Rule 23(b)(3) in that 1) the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and 2) this class action is superior to other available methods for the fair and efficient adjudication of the controversy between the parties.

41. Plaintiffs are informed and believe and based thereon allege that the interests of members of each class in individually controlling the prosecution of a separate action are low. Most class members would be unable to individually prosecute any action at all. Plaintiffs are informed and believe and based thereon allege that the amounts at stake for individuals are so small that separate suits would be impracticable. Plaintiffs are informed and believe and based thereon allege that most members of the class will not be able to find counsel to represent them.

42. Plaintiffs are informed and believe and based thereon allege it is desirable to concentrate all litigation in one forum because the VSP is a Los Angeles City-wide policy presumptively enforced by City / LADOT / LAPD officials as against all vehicle owners within the City's jurisdiction. It would consume undue and unnecessary resources to litigate the identical issues in different forums.

43. Liability can be determined on a class-wide basis regarding what provisions of the VSP are lawful. For instance, a determination of seizing a vehicle without a warrant in order to coerce the vehicle owner's to pay unpaid parking tickets violates the Fourth and Fourteenth Amendments, that determination disposes of *all* Fourth and Fourteenth Amendment claims of *all* class members.

44. To the extent it is determined that notice is required for the Plaintiff Class, then, class members will be identified by the records of LADOT, LAPD sand OPG-LA.

///

## VI. APPROPRIATENESS OF EQUITABLE RELIEF.

45. Plaintiffs and Injunctive Relief Class members do not have an adequate remedy at law for the injuries alleged herein. The continuing enforcement of the VSP violates Plaintiffs' and class members Fourth Amendment rights guaranteeing that all seizures must be reasonable, and causes continuing, sweeping and irreparable harm to Plaintiffs and class members by the ongoing deprivation of their vehicles, property that is essential for Plaintiffs and class members' livelihood and necessities of life, e.g., transporting owners for employment, medical care and other essentials of life.

46. Plaintiffs and Injunctive Relief Class members are also entitled to declaratory relief with respect to the constitutionality of the VSP, and an injunction preventing the enforcement of those aspects determined to be unconstitutional. Such relief is necessary in that an actual and substantial controversy exists between Plaintiffs and class members, who contend that the VSP is unconstitutional, and Defendants, who deny such contention and enforce its provisions. Without such a declaration and injunction, Plaintiffs face the ongoing threat of its enforcement.

47. Injunctive relief does not raise any mootness issues because the harm alleged may be revisited on the class where it is capable of repetition, yet evading review due to the transitory nature of Plaintiffs' claims. *County of Riverside v. McLaughlin*, 500 U.S. 44, 51-52 (1991).

### COUNT ONE

Class-Based Injunctive Relief: Commanding Release and Return of Vehicles AND Enjoining Enforcement of the VSP / Impounding Vehicles

For Unpaid Parking Tickets

(Against All Defendants)

(42 U.S.C. § 1983 / Art. I § 13 Cal. Const.)

48. By this reference, Plaintiffs, as class representative for members of the Injunctive Relief Class, re-allege and incorporate all previous and following paragraphs as if fully set forth herein.

00149422.WPD

49. Both the initial seizures and the ongoing impoundments of vehicles belonging to members of the Injunctive Relief Class are Fourth Amendment seizures effected without warrants and in the absence of community caretaking justification, i.e., the vehicles do not present a threat to public safety. Specifically, the impounded vehicles do not "impede traffic, threaten public safety, or be[come] subject to vandalism," *Miranda v. City of Cornelius*, 429 F.3d 858, 862-65 (9th Cir. 2005). Meanwhile, the ongoing seizures without warrants of vehicles belonging to Injunctive Relief Class members, violates the Fourth Amendment, *Brewster v. Beck*, 859 F.3d 1194, 1196-97 (9th Cir. 2017). Class members are willing and able to lawfully reclaim possession, and seek possession of their vehicles, but are denied possession on account of the VSP.

50. The seizure of vehicles pursuant to the VSP violates the Fourth Amendment to the United States Constitution, and Art. I § 13 of the California Constitution, regardless of whether the initial seizure and removal of the vehicle was constitutionally valid or not.

51. The acts alleged herein were the product of a custom, practice and/or policy of defendants City, LADOT and LAPD, which custom, practice and/or policy caused the constitutional violations alleged herein.

## COUNT TWO

Damages Claim -- both Class-based and individually for Plaintiffs

(Against All Defendants)

(42 U.S.C. §1983 - Fourth Amendment)

52. By this reference, Plaintiffs, on behalf of themselves and members of the Damages Class, re-allege and incorporate all previous and following paragraphs as if fully set forth herein.

53. Both the initial seizures and the subsequent impoundments of vehicles belonging to Plaintiffs and members of the Damages Class where such seizures were effected without warrants and did not meet the requirements of the community

00149422.WPD

caretaking doctrine, i.e., the vehicles did not present a threat to public safety; the seizures and impoundments violated the Fourth Amendment to the United States Constitution, and entitle Plaintiffs and class members to recover compensatory damages from all defendants, proximately caused by the seizures and impoundments.

54. The acts alleged herein were the product of a policy or custom of defendants City, LADOT and LAPD, which policy or custom caused the constitutional violations alleged herein.

## COUNT THREE

Damages Claim -- both Class-based and individually for Plaintiffs

(Against All Defendants)

(42 U.S.C. §1983 - Fifth Amendment [Takings without Compensation])

55. By this reference, Plaintiffs, on behalf of themselves and members of the Damages Class, re-allege and incorporate all previous and following paragraphs as if fully set forth herein.

56. The seizures of vehicles belonging to Plaintiffs and members of the Damages Class, constitute Takings within the meaning of the Fifth Amendment. Furthermore, defendants City / LADOT / LAPD effect the Takings for a public purpose -- coercing vehicle owners to pay the City sums allegedly due the City for unpaid parking tickets. Seizing vehicles merely for non-payment of parking fees does not, in and of itself, justify the seizures. Thus, the seizures are Takings for which all defendants owe compensation to Plaintiffs and members of the Damages class.

## COUNT FOUR

Violation of Cal. Civil Code § 52.1 -- both Class-based

and individually for Plaintiffs

(As Against All Defendants)

57. By this reference, Plaintiffs, on behalf of themselves and members of the Damages Class, re-allege and incorporate all previous and following paragraphs as if fully set forth herein.

58. Plaintiffs are informed and based thereon allege the impoundments of vehicles belonging to Plaintiffs and the Class they represent were done intentionally, at defendants' discretion. Defendants imposed and enforced the continuing impounds so as to punish Plaintiffs and the Class they represent, and to force payments to the City. Defendants enforced the VSP in knowing violation of the Fourth and Fifth Amendments to the United States Constitution, and Art. I § 13 of the California Constitution.

59. Plaintiffs are informed and based thereon allege defendants Reynolds, Hale and Does knew enforcement of the VSP violated the Fourth and Fifth Amendments, yet took no steps to stop or modify its enforcement.

60. Consequently, the rights of Plaintiffs and the Class they represent, under the United States and California Constitutions described above were interfered with by threat, intimidation, or coercion in violation of Cal. Civil Code § 52.1, thereby entitling Plaintiffs and the Damages Class to recover damages under Cal. Civ. Code § 52.1(b) proximately caused by the impoundment and the attendant violations of law previously described.

## COUNT FIVE
Violation of Cal. Const., Art. I, §13 -- both Class-based

and individually for Plaintiffs

(As Against All Defendants)

61. By this reference, Plaintiffs, on behalf of themselves and members of the Damages Class, re-allege and incorporate all previous and following paragraphs as if fully set forth herein.

62. The seizures and impoundments of Plaintiffs' and Damages Class Members' vehicles were accomplished without warrants and not justified by an exception to the warrant requirement, *i.e.*, during the impoundment the vehicle did not present a threat to public safety and community caretaking did not justify the initial and continuing seizures of the vehicles. Hence, the impounds violated Art. I § 13 of the California Constitution.

63. Therefore, Plaintiffs and members of the Damages Class are entitled to recover damages under Art. I § 13 of the California Constitution.

**COUNT SIX**

Violation of Due Process / Equal Protection (14th Amendment) -- both Class-based and individually for Plaintiffs

(As Against All Defendants)

64. By this reference, Plaintiffs, on behalf of themselves and members of the Damages Class, re-allege and incorporate all previous and following paragraphs as if fully set forth herein.

65. Defendants have denied, or are denying Plaintiffs and class members their vehicles, and are preventing Plaintiffs from obtaining current DMV registration for their vehicles unless Plaintiffs and class members first pay the City what defendants claim the City is owned for parking citations. In other words, defendants are holding as hostage the vehicles belonging to Plaintiffs and class members unless and until Plaintiffs and class members pay up.

66. By placing DMV registration holds on the vehicles belonging to Plaintiffs and class members and demanding that Plaintiffs pay what defendants claim the City is owed without any consideration of Plaintiffs' and class members' indigence, defendants are inflicting punishment on Plaintiffs and class members solely on the basis of their poverty. This is a violation of the due process and equal protection rights of Plaintiffs and class members. *E.g., People v. Dueñas*, 30 Cal.App.5th 1157, 1166-69 (2019). Plaintiffs and class members are therefore entitled to recover damages proximately caused by defendants' violations.

WHEREFORE, Plaintiffs respectfully request that this Court grant the following relief:

*On The First Cause of Action:*

67. That the Court certify this case pursuant to F. R. Civ. P. 23(b)(2) as a class action on behalf of a class composed of the Injunctive Relief Class described above;

-16-

00149422.WPD

68. That the Court issue a declaration that the VSP, in the respects set forth herein, is unconstitutional on its face and of no force or effect. Specifically, that this Court declare that the VSP is facially unconstitutional to the extent that it directs vehicle seizures without warrants in the absence of consent, exigent circumstances, emergency or community caretaking;

69. That the Court issue a permanent injunction on behalf of the Injunctive-Relief Class members commanding defendants, and each of them, to release immediately to class members their respective vehicles, upon proof that Plaintiff and class members can lawfully take possession;

70. That the Court issue a permanent injunction on behalf of the Injunctive-Relief Class members enjoining defendants from enforcing the VSP;

71. That this Court award Plaintiffs attorneys fees and costs incurred in this action under 42 U.S.C. § 1988, Cal. Civ. Proc. Code § 1021.5, Cal. Civil Code § 52.1, California's private attorney general doctrine, and any other appropriate statute.

*On The Second and Third Causes of Action:*

72. That the Court certify this case pursuant to F. R. Civ. P. 23(b)(3) as a class action on behalf of a class of Plaintiffs composed of the Damages Class described above;

73. That the Court award Plaintiffs and class members, compensatory damages, according to proof;

74. That as against defendants Reynolds, Hale and DOES, the Court award punitive damages in an amount sufficient to deter and punish these defendants;

75. That this Court award attorneys fees and costs incurred in this action under 42 U.S.C. § 1988, and any other appropriate statute.

*On The Fourth Cause of Action:*

76. That this Court award Plaintiffs and class members, damages allowed under Cal. Civ. Code § 52.1(b) & (c), including statutory damages and penalties;

77. That this Court award attorneys' fees and costs incurred in this action under

Cal. Civ. Code § 52.1(h), and any other appropriate statute.

*On the Fifth Cause of Action:*

78. That the Court certify this case pursuant to F. R. Civ. P. 23(b)(3) as a class action on behalf of a class of Plaintiffs composed of the Damages Class described above;

79. That the Court award Plaintiffs and class members, compensatory damages, according to proof;

80. That as against defendants Reynolds, Hale and DOES, the Court award punitive damages in an amount sufficient to deter and punish these defendants;

81. That this Court award attorneys fees and costs incurred in this action under 42 U.S.C. § 1988, and any other appropriate statute.

*On the Sixth Cause of Action*:

82. That this Court award Plaintiffs and class members, damages allowed under Art. I § 13 of the California Constitution;

83. That this Court award attorneys' fees and costs incurred in this action under Cal. Civ. Proc. Code § 1021.5 and California's Private Attorney General doctrine, and any other appropriate statute; and

*On All Causes of Action:*

84. That the Court award costs of suit; and

85. That this Court grant such other and further relief as may be just and proper.

DATED: June 9, 2022

          **DONALD W. COOK**
          Attorney for Plaintiffs

    By _____
         Donald W. Cook

**DEMAND FOR JURY TRIAL**

Plaintiffs demand a jury trial on their own behalf and on behalf of the Damages Class.

DATED: June 9, 2022

                                **DONALD W. COOK**
                                Attorney for Plaintiffs

By _____
                   Donald W. Cook

00149422.WPD