MICHAEL N. FEUER, City Attorney
SCOTT MARCUS, Chief Assistant City Attorney (SBN 184980)
GABRIEL S. DERMER, Assistant City Attorney (SBN 229424)
JOSEPH S. PERSOFF, Deputy City Attorney (SBN 307986)
200 North Main Street, 6th Floor, City Hall East
gabriel.dermer@lacity.org
joseph.persoff@lacity.org
Los Angeles, CA 90012
Phone No.: (213) 978-7560
Fax No.:    (213) 978-7011

*Attorneys for Defendants,*
**CITY OF LOS ANGELES et al.**

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BREONNAH FITZPATRICK, CHRISTOPHER OFFICER, and TIMOTHY McCARTHY, individuals and as class representatives,<br><br>                    Plaintiff,<br><br>        vs.<br><br>CITY OF LOS ANGELES, a municipal corporation; CITY OF LOS ANGELES DEPARTMENT OF TRANSPORTATION, a public entity; LOS ANGELES POLICE DEPARTMENT, a public entity; GENERAL MANAGER SELETA REYNOLDS, an individual; BRIAN HALE, CHIEF-PARKING ENFORCEMENT & TRAFFIC CONTROL, individually and in their official capacities; and DOES 1 through 10, in their individual and official capacities,<br><br>                    Defendants. | **CASE NO.  21-CV-06841-JGB-SP**<br><br>**DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**<br><br>[Filed concurrently with Notice of Motion; Motion to Dismiss; and [Proposed] Order]<br><br><u>Hearing</u><br>Date: August 1, 2022<br>Time: 9:00 a.m.<br>Courtroom 1 |

**TO THIS HONORABLE COURT AND TO ALL PARTIES AND THEIR COUNSEL:**

**PLEASE TAKE NOTICE THAT** pursuant to Federal Rules of Evidence, Rule 201, Defendants City of Los Angeles, Seleta Reynolds, and Brian Hale respectfully request that the Court take judicial notice of the following exhibits in support of their Motion to Dismiss Plaintiffs' Second Amended Complaint:

- Los Angeles Municipal Code § 80.55, a true and correct copy of which is attached as **Exhibit A**.
- Los Angeles Municipal Code § 80.55.1, a true and correct copy of which is attached as **Exhibit B**.
- Los Angeles Municipal Code § 80.56, a true and correct copy of which is attached as **Exhibit C**.
- Los Angeles Municipal Code § 80.70, a true and correct copy of which is attached as **Exhibit D**.
- The ruling from the United States District Court for the Northern District of California, *Le v. Dep't of Parking & Traffic of San Francisco*, Case No. C 04-03432 CRB, 2005 U.S. Dist. LEXIS 1224 (N.D. Cal. Jan. 21, 2005), a true and correct copy of which is attached as **Exhibit E**.
- A webpage from the Los Angeles Department of Transportation website, titled, "Community Assistance Parking Program Information," as of June 27, 2022, *available at* https://ladotparking.org/operations-support/capp-info/, a true and correct copy of which is attached as **Exhibit F**.
- A webpage from the Los Angeles Department of Transportation website, titled, "Installment Payment Plan (IPP)," as of June 27, 2022, *available at* https://prodpci.etimspayments.com/pbw/include/laopm/ticket_ipp.htm, a true and correct copy of which is attached as **Exhibit G**.
- The City of Los Angeles Application For An Installment Payment Plan,

1

*available at*

https://prodpci.etimspayments.com/pbw/include/laopm/ipp_income_guide
lines.pdf, a true and correct copy of which is attached as **Exhibit H**.

- Los Angeles City Charter, § 500, a true and correct copy of which is attached as **Exhibit I**.
- Los Angeles Administrative Code, § 22.480, a true and correct copy of which is attached as **Exhibit J**.

The content of these Los Angeles Municipal Code sections and documents on government websites may be judicially noticed under Fed. R. Evid. § 201 as it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned. *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998-99 (9th Cir. 2010) ("It is appropriate to take judicial notice of this information, as it was made publicly available by government entities. . . and neither party disputes the authenticity of the web sites or the accuracy of the information displayed therein."); *Santa Monica Food Not Bombs v. City of Santa Monica*, 450 F.3d 1022, 1025, n.2 (9th Cir. 2006) (judicial notice of city ordinances is proper); *Bassilios v. City of Torrance*, 166 F.Supp.3d 1061, 1065, n.1 (C.D. Cal. 2015) (taking judicial notice of municipal code).

Dated: June 29, 2022          Respectfully submitted,

MICHAEL N. FEUER, City Attorney
SCOTT MARCUS, Chief Assistant City Attorney
GABRIEL S. DERMER, Assistant City Attorney
JOSEPH S. PERSOFF, Deputy City Attorney

By:   /s/  Joseph S. Persoff
Joseph S. Persoff
Deputy City Attorney
Attorneys for Defendants

DEFENDANTS' REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION
TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT

# EXHIBIT A

**SEC. 80.55. DEPARTMENT MAY PROHIBIT STOPPING OR PARKING AT CERTAIN DESIGNATED LOCATIONS.**
**(Amended by Ord. No. 134,523, Eff. 7/17/67.)**

(a)   The Department shall prohibit the stopping or parking of vehicles on any of the following places:

1.   Any place where the stopping or parking of vehicles is determined by the Department to constitute a hazard to traffic, life or property, or an obstruction to vehicular or pedestrian passage;

2.   Any place, within 30 feet of an intersection in any business district, except that a bus may stop at a designated bus stop:

3.   Any place within 25 feet of the approach to the nearest line of a crosswalk, except that a bus may stop at a designated bus stop, but not within five feet of said nearest line of a crosswalk;

4.   Any place with 25 feet of any traffic signal, stop sign or other official electrical flashing device, except that a bus may stop at a designated bus stop, but not within five feet of any traffic signal, stop sign or official electrical flashing device. **(Former Subdiv. 4 Deleted and Former Subdiv. 5 Renumbered by Ord. No. 177,716, Eff. 9/4/06.)**

5.   Any place within 15 feet of any "**yield**" sign, except that a bus may stop at a designated bus stop. **(Former Subdiv. 6 Renumbered by Ord. No. 177,716, Eff. 9/4/06.)**

6.   Upon any street or portion thereof contiguous to the frontage of any elementary school, junior or senior high school where it is determined that parking will create a hazard to life and property, or a serious obstruction to vehicles or pedestrian passage. **(Former Subdiv. 7 Renumbered by Ord. No. 177,716, Eff. 9/4/06.)**

EXCEPTION:

Authorized school buses owned by or under contract with the Board of Education or operated by or through recognized parochial school systems are excepted from the provisions of this subdivision when loading or unloading during school days and hours when approved by the Department.

7.   At any designated bus stop. **(Added by Ord. No. 152,426, Eff. 6/29/79; Former Subdiv. 8 Renumbered by Ord. No. 177,716, Eff. 9/4/06.)**

8.   Upon a bridge. **(Added by Ord. No. 184,316, Eff. 6/11/16.)**

EXCEPTION:

The Department of Transportation is authorized pursuant to this Section to install signs that permit parking on bridges that the Department has determined are structurally capable of supporting parked vehicles, and have sidewalks and shoulders of sufficient width to permit parking without interfering with the normal movement of traffic. Parking shall not be permitted until signs are installed containing any time or other restrictions that may apply.

(b)   The department shall designate such places by appropriate signs or markings, and no person shall thereafter stop or park any vehicle at such place.

# EXHIBIT B

**SEC. 80.55.1. STOPPING, STANDING, OR PARKING WITHIN 15 FEET OF A DRIVEWAY USED BY EMERGENCY VEHICLES.**

(Added by Ord. No. 186,219, Eff. 8/12/19.)

(a)   No person shall stop, park, or leave standing a vehicle, whether attended or unattended, except as necessary to avoid conflict with other traffic or in compliance with the directions of a peace officer or official traffic control device, within 15 feet of a driveway that is used by an emergency vehicle owned or operated by the Los Angeles Police Department, an ambulance service care provider, or general acute care hospital, to enter or exit a police station, ambulance service provider facility, or general acute care hospital. This section does not apply to any vehicle owned or operated by LAPD, LAFD, an ambulance service provider, or general acute care hospital if the vehicle is clearly marked as a police vehicle, fire department vehicle, ambulance, or general acute care hospital vehicle.

(b)   The Department of Transportation shall install appropriate curb markings or "KEEP CLEAR" pavement markings and post signs that delineate the area specified in Subsection (a).

(c)   **Penalties.** A violation of this section shall be a civil fine in the amount of $68; with late penalty $136; with second late penalty $161.

# EXHIBIT C

**SEC. 80.56. ESTABLISHMENT OF PASSENGER, COMMERCIAL, SHORT TIME LIMIT, AND "NO STOPPING" CURB ZONES.**

(a)   The Department is hereby authorized to install passenger loading zones at those locations where the Department determines that hazards would thereby be reduced, access to property improved, or impedance to traffic reduced. **(Amended by Ord. No. 134,523, Eff. 7/17/67.)**

(b)   The Department of Transportation (Department) is authorized to install commercial loading zones at locations where it determines that hazards would be reduced, access to property improved, and impedance to traffic reduced. In addition, the Department is authorized to install, operate, and regulate Zero-Emission Vehicle (ZEV) Commercial Loading Zones for the exclusive use and access by zero-emission commercial delivery vehicles, including, but not limited to, light electric freight vehicles. For purposes of this subsection, ZEV means a vehicle that produces no emissions of criteria pollutants, toxic air contaminants, and greenhouse gases when stationary or operating, as determined by the California Air Resources Board. For purposes of this section, Light Electric Freight Vehicle (LEFV) means an electric bike, moped, or compact vehicle with electric assistance or drive mechanism, designed for the distribution of commercial freight, goods, or parcels, capable of a maximum speed of 28 miles per hour. LEVF's include electric cargo bikes (E-Cargo Bikes), with two or more wheels, designed to carry up to a maximum of 770 pounds for the delivery of commercial freight, goods, or parcels. **(Amended by Ord. No. 187,117, Eff. 8/7/21.)**

(c)   The Department is hereby authorized to install short-time parking limit zones at those locations where it determines that access to property would be improved or a more equitable distribution of available curb space would be obtained. Additionally, the Department is authorized to prescribe the longer of the two periods of time provided for below in Subsection (e)3, if it finds that factors exist which reasonably constitute an impediment to the utilization of nearby services and facilities within the shorter period of time. **(Amended by Ord. No. 161,733, Eff. 12/11/86.)**

(d)   The Department shall install red "**No Stopping**" zones or signs reading "**No Stopping Any Time**" at places where the stopping of vehicles is prohibited under Section 80.55 of this Code. **(Amended by Ord. No. 134,523, Eff. 7/17/67.)**

(e)   **Time Limits for All Zones.** The time limits and effective hours of passenger loading zones, short-time parking limit zones, "**No Stopping**" zones, and commercial loading zones shall be as follows: **(Amended by Ord. No. 180,092, Eff. 9/7/08.)**

1.   No person shall stop, stand or park a vehicle in any passenger loading zone except for the purpose of loading or unloading passengers and their personal baggage and then only for the time necessary therefor, and in no event for more than five minutes, except for a maximum of ten minutes where signs indicating a ten minute limit are posted. Such passenger loading zones shall be in effect during all times unless limited to specified hours and/or days by posted signs. Vehicles may be towed when passenger loading zone signs include notice that vehicles may be removed. **(Amended by Ord. No. 182,484, Eff. 4/28/13)**

2.   No person shall stop, stand or park a vehicle in a commercial loading zone, except that commercial vehicles may stop or stand for the purpose of loading or unloading freight for the time necessary therefor, but not to exceed 30 minutes, except as provided in Section 88.01.1 of this chapter. Passenger vehicles may stop or stand for the purpose of loading or unloading passengers and their personal baggage, and then only for the time necessary therefor but in no event for more than five minutes. Such commercial loading zones shall be in effect during the hours and on the days indicated by posted signs, or if none, between the hours of 7:00 a.m. and 6:00 p.m. on any day except Sunday. **(Amended by Ord. No. 187,117, Eff. 8/7/21.)**

**Exception: ZEV Commercial Loading Zone.** No person shall stop, stand or park a vehicle, commercial or otherwise, in a ZEV Commercial Loading Zone designated for the exclusive use by zero-emission commercial delivery vehicles. However, a zero-emission commercial delivery vehicle also may stop, stand or park in a Commercial Loading Zone. A commercial delivery vehicle in either zone, shall stop, stand or park only for the purpose of loading or unloading freight, goods, or parcels for the time necessary to do so, but not for a period exceeding 30 minutes, except in a ZEV Commercial Loading Zone for a maximum of one hour where signs indicating a one hour limit are posted, and except as provided in Section 88.01.1 of this chapter. ZEV Commercial Loading Zones shall be in effect during the hours and on days indicated by posted signs, or if none, between the hours of 7:00 a.m. and 6:00 p.m. **(Added by Ord. No. 187,117, Eff. 8/7/21.)**

3.   No person shall stop, stand or park a vehicle in any short-time parking limit zone for a period of time longer than that indicated by posted signs or curb markings. Such time limit shall be fifteen minutes unless the Department determines, pursuant to Subsection (c) above, that the public welfare requires a longer period, in which latter case the time limit shall be thirty minutes. Such time limits shall be in effect during the hours and on the days indicated by posted signs, or if none, between the hours of 8:00 o'clock A.M. and 6:00 o'clock P.M. on any day except Sunday.

4.   No person shall stop, stand or park a vehicle at any time in any red "**No Stopping**" zone or portion of street posted with signs reading "**No Stopping Any Time**", except that a bus may stop in such zone or portion of street marked or sign posted as a bus stop. Such "**No Stopping**" zones shall be in effect during all times unless limited to specified hours and/or days by posted signs.

(f)   **Markings for Zones.**

1.   Passenger Loading zones when designated by painted curbs shall be white and stenciled "**Passenger Loading Only**."

(a)   White curb zones may also be stenciled "**Mailbox Deposit Only**" when designated for this purpose.

2.   Commercial Loading Zones when designated by painted curbs shall be **YELLOW** and stenciled "**Loading Only**." **(Amended by Ord. No. 111,487, Eff. 6/28/58.)**

3.   Short-time Parking Limit Zone when designated by painted curbs shall be **GREEN** and stenciled "**15 Minutes Limit**" or "**30 Minute Limit**," as provided by Subsection (c) and Subdivision (3) of Subsection (e) of this section. **(Amended by Ord. No. 161,733, Eff. 12/11/86.)**

4.   "**No Stopping**" Zones when designated by painted curbs shall be **RED**.

5.   Official signs using above standard colors and legends may be posted by the Department in lieu of painting the curbs. **(Amended by Ord. No. 134,523, Eff. 7/17/67.)**

The 30 day period of Penal Code Section 1382 does not begin to run as of the date a citation is placed upon an illegally parked car. *People v. Miller* (1954) CR A 3178.

# EXHIBIT D

**SEC. 80.70. PARKING PROHIBITED OR LIMITED IN ANTI-GRIDLOCK ZONES.**

**(Added by Ord. No. 177,753, Eff. 9/8/06.)**

(a)    Whenever, with reference to any Major Highway or portion of a Major Highway, the Department determines that traffic demand between 6:00 a.m. and 7:00 p.m. on weekdays requires the use of the curb lane as an additional, continuous lane for through-traffic in order to avoid gridlock, it shall be unlawful for any person to park, stand or stop a vehicle in an Anti-Gridlock Zone, other than for emergency repairs or activities authorized by the City pursuant to permits issued for these activities, during these hours and days as are indicated on signs. The Department of Transportation shall determine and identify those streets in the City of Los Angeles that comprise Anti-Gridlock Zones, and shall install and maintain signs giving notice of the Zone.

(b)    The Department of Transportation is authorized to include notice, on any sign that prohibits the stopping or parking of vehicles in an Anti-Gridlock Zone during certain hours and days, that vehicles parked or left standing in violation of the sign may be removed.

(c)    The provisions of Section 88.01.1 of this chapter are not applicable to signs erected pursuant to this section.

# EXHIBIT E

## Le v. Dep't of Parking & Traffic of San Francisco

United States District Court for the Northern District of California

January 21, 2005, Decided ; January 24, 2005, Filed

No. C 04-03432 CRB

**Reporter**

2005 U.S. Dist. LEXIS 1224 *

HAI T LE, Plaintiff, v. DEPT OF PARKING AND TRAFFIC OF SAN FRANCISCO, Defendant.

**Disposition:** Defendant's motion to dismiss granted.

**Counsel:** [*1] For Hai T. Le, Plaintiff: Pro se, San Francisco, CA.

For Department of Parking & Traffic of San Francisco, Defendant: Philip A. Leider, San Francisco, CA.

**Judges:** CHARLES R. BREYER, UNITED STATES DISTRICT JUDGE.

**Opinion by:** CHARLES R. BREYER

**Opinion**

### MEMORANDUM AND ORDER

Plaintiff pro se Hai T. Le brings this action to recover relief for alleged damages arising out of an attempt by the San Francisco Department of Parking to tow his car. Now before the Court is defendant's motion to dismiss for failure to state a claim and for lack of jurisdiction. Plaintiff also moves for summary judgment. After carefully reviewing the papers submitted by the parties and conducting a hearing, the Court

hereby GRANTS defendant's motion to dismiss.

### BACKGROUND

In his First Amended Complaint (FAC) plaintiff alleges that on February 8, 2003, the Warfield Theater was holding an event, and parking on streets near the theater had been restricted. Plaintiff, not seeing the "No Parking" sign, parked in one of these spaces, and was issued a parking ticket. Mr. Le saw the parking officer writing the ticket, and threatened to file a federal lawsuit against him. Plaintiff then moved the car to another parking [*2] space nearby. Later, the officer returned with a tow truck and driver. The driver attached the car to the truck and lifted it from the ground. Plaintiff confronted the driver and asked him not to tow the car. Failing in those efforts, plaintiff then entered his car, turned the wheels, and set the parking brake. During the incident, the car's steering column was damaged. After the parking officer ordered him from the car, plaintiff then returned home and called 911. Two police officers appeared soon thereafter and spoke briefly with the parking officer. The parking officer and the tow truck driver departed, leaving the car in the middle of

the street and embarrassing plaintiff.

## DISCUSSION

The FAC states the several claims for relief: (1) Malicious Act; (2) Abuse of Procedural Due Process; (3) Abuse of Process; (4) Extortion; (5) Extortion; (6) Extortion; (7) Discrimination; (8) Use of Excessive Force; (9) Trespass; (10) Subject or Cause Subject to Deprivation of Privileges; (11) Failure to Give Equal Protection of the Law; (12) Violation of 42 USC § 1983; (13) Malicious Act to Deprive Constitutional Rights and Privileges; (14) Violation of Fourth Amendment [*3] to the Constitution -- Seizure without Due Process.

The complaint may be read to make federal claims under 42 U.S.C. § 1983 based on violations of several constitutional rights. Causes of action one, two, three, nine and ten appear to argue that when defendant towed plaintiff's car without giving him notice that he violated a statute, his constitutional right to procedural due process was violated. Causes of action four, five, six and thirteen may be read as arguing that the City's issuance of a fine for the parking citation, coupled with the state's threat to suspend his car's registration for nonpayment, also constitutes a violation of his procedural due process rights. Causes of action seven and eleven argue that, in towing Mr. Le's car, defendant was discriminating against plaintiff on the basis of race, in violation of his constitutional right to equal protection. Causes of action eight and fourteen may be read as claiming that defendant used excessive force in

towing plaintiff's car, in violation of the Fourth Amendment's prohibition of unreasonable seizures. All other potential claims are either redundant or purely based on state law.

[*4]

Plaintiff's two claims with respect to procedural due process both fail as a matter of law.

Plaintiff first claims that the City's action in towing his car without notice violates his right to due process. A claim of a deprivation of property in violation of the constitutional right to procedural due process is evaluated pursuant to the standard articulated by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319, 333, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976). "To determine what procedures are required, we balance the competing government and private interests." *Scofield v. City of Hillsborough*, 862 F.2d 759, 762 (9th Cir. 1988) (citing *Mathews*, 424 U.S. at 334).

Several courts have discussed the question of whether notice or a hearing is required prior to towing of an illegally parked car. All have reached the same result: no notice or hearing is required. *Scofield*, 862 F.2d at 762-64 (9th Cir. 1988) (citing with approval cases from the Fourth, Fifth, Seventh, Eighth, and D.C. Circuits, which all held that no notice or hearing was required prior to towing an illegally parked car, and holding that no notice or hearing was required [*5] in the analogous situation of towing an unregistered vehicle). Moreover, even if it were plaintiff's contention that his

car was not illegally parked, his right to a post-towing hearing under California Vehicle Code § 22852 adequately protects his right to procedural due process. *Id.* at 764 ("Such procedures ensure that any erroneous deprivation of an owner's vehicle will be slight, and satisfies due process concerns." (citations omitted)).

Plaintiff's second procedural due process claim is that his due process rights were violated when the city fined him for parking at an expired meter and subsequently enforced the fine by threatening suspension of his registration. *See* California Vehicle Code § 4760. Plaintiff contends that suspension of his registration is tantamount to a deprivation of his "right" to drive. This claim, too, is not novel. Courts taking up similar issues, and conducting an in-depth analysis under *Mathews* have found that the suspension of the privilege to drive without a hearing does not, under these circumstances, violate due process. *See, e.g., Pempek v. Edgar*, 603 F. Supp. 495, 500 (D. Ill. 1984) (suspension of drivers' [*6] license due to unpaid parking tickets does not violate due process, even where no hearing is afforded).

Moreover, if it is plaintiff's contention that California Vehicle Code § 4760, which provides for enforcement of parking fines through registration suspension, is unconstitutional, this claim also fails. Just as *Scofield* held that an unregistered vehicle may be towed to further the government's interest in enforcement of the registration laws, *Scofield*, 862 F.2d at 764-65, so too may the government suspend a registration to further the "valid purpose [of]

implementing parking regulations [and] detering future transgressions." *Id.* at 763 (citation omitted).

## II. Equal Protection

A plaintiff alleging denial of equal protection under 42 U.S.C. § 1983 based on race or another suspect classification must plead intentional unlawful discrimination or otherwise allege facts that are susceptible of an inference that defendant acted with a discriminatory intent. *Monteiro v. Tempe Union High School Dist.*, 158 F.3d 1022, 1026 (9th Cir. 1998). To state a claim for relief, the plaintiff must allege that the defendant [*7] state actor acted at least in part because of plaintiff's membership in a protected class. *Serrano v. Francis*, 345 F.3d 1071, 1081-82 (9th Cir. 2003). However, as with any § 1983 claim, a plaintiff must make more than "vague and conclusory" assertions that "aim[] in the general direction of the federal Constitution with buckshot" in order to survive a motion to dismiss under Rule 12(b)(6). *Buckey v. County of Los Angeles*, 968 F.2d 791, 794 (9th Cir. 1992) *cert. denied*, 506 U.S. 999, 121 L. Ed. 2d 536, 113 S. Ct. 599, 113 S. Ct. 600 (1992).

Plaintiff claims in his complaint that, "the defendant never thinks one person like the plaintiff would be able to resist the defendant's power and authority . . . therefore, the plaintiff, as minority, is vulnerable to this type of violation committed by local government agencies." FAC P 90.

In the context of this case, these statements

are not sufficient to state a claim under § 1983. Plaintiff has only brought suit against the City and County of San Francisco, and has not named the individual officers as defendants. *See* Plaintiff's Opposition at p. 8 (stating that "the City is the appropriate defendant"). Therefore, plaintiff must allege a deprivation [*8] of the plaintiff's rights by a government policy or custom. *See Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 694, 56 L. Ed. 2d 611, 98 S. Ct. 2018 (1978). Evidently, the thrust of Mr. Le's argument is that the City, acting in pursuit of illegitimate financial gain, sets a quota for the issuance of parking tickets which parking officers enforce or else "they would be fired." *See* FAC P 7; Opposition at p. 8. In contrast, his claims regarding race discrimination are aimed at the specific parking officer that attempted to have his car towed. *See FAC* PP 90-91. Because the FAC lacks any allegation that the City maintained a policy or custom that caused his car to be towed, plaintiff's equal protection claim must be dismissed.

Even if the complaint could somehow be read as alleging some policy or practice, it still must be dismissed because plaintiff has not pled any facts that could reasonably support an inference that discrimination played a role in his car being towed.

As stated by the Ninth Circuit:

> The standard used to evaluate a motion to dismiss is a liberal one, particularly when the action has been filed pro se . . . However, a liberal interpretation of a civil rights complaint [*9] may not supply essential elements of the claim that were not initially pled. Vague and conclusory allegations of official participation in civil rights violations are not sufficient to withstand a motion to dismiss.

*Ivey v. Board of Regents of University of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Furthermore, the plaintiff's allegations must be "supported by reference to . . . specific actions, practices, or policies of the . . . defendants." *Id.* Here, defendant has only made "conclusory allegations" of discrimination, without pointing to any specific actions of the City that might prove such an intent. *See id.* (dismissing because the complaint was "devoid of specific factual allegations showing the . . . defendants' participation in the alleged discriminatory . . . practice."). Accordingly, his claims for relief based on equal protection must be dismissed.

## III. Excessive Force

Plaintiff's claim for excessive force also fails as a matter of law. Even assuming that a Fourth Amendment violation can be made out where the force is solely used against plaintiff's property, rather than plaintiff's person, the seizure of plaintiff's property [*10] would still be proper if the use of force was "objectively reasonable" under the circumstances. *see Jackson v. City of Bremerton*, 268 F.3d 646, 651 (2001) (citing *Graham v. Connor*, 490 U.S. 386, 397, 104 L. Ed. 2d 443, 109 S. Ct. 1865 (1989)). Here all the city did was to attempt to tow plaintiff's car. Any damage resulting from that attempt is purely the fault of

2005 U.S. Dist. LEXIS 1224, *10

plaintiff, who admits that he turned the wheels and set the parking brake while the car was being towed. [1]

[*11] Accordingly, this claim, too, is dismissed.

## CONCLUSION

Defendant's motion to dismiss for lack of jurisdiction and for failure to state a claim are GRANTED. Plaintiff's motion for summary judgment and defendant's other motions are therefore moot.

Because no federal claims remain in this action, and because the Court declines to exercise supplemental jurisdiction over any of plaintiff's potential state law claims, *see* 28 U.S.C. § 1367(c)(3), this order disposes of plaintiff's case in its entirety.

**IT IS SO ORDERED**.

Dated: January 21, 2005

CHARLES R. BREYER

UNITED STATES DISTRICT JUDGE

## JUDGMENT

The Court having granted defendant's motion to dismiss by an Order dated January 21, 2005, it is hereby ordered that judgment be entered in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED**.

Dated: January 21, 2005

CHARLES R. BREYER

UNITED STATES DISTRICT JUDGE

---

**End of Document**

---

[1] The FAC also makes allegations that the police used force against plaintiff when he was arrested on September 8, 1999. FAC PP 48-50. However, even if this claim were made a part of plaintiff's excessive force claim, which it was not, it would still be time-barred. *See Silva v. Crain*, 169 F.3d 608, 610 (9th Cir. 1999) (Section 1983 statute of limitations is borrowed either from state's limitations period for personal injury actions or from residual statute); Cal. Civ. Proc. Code § 335.1 (two-year statute of limitations for personal injury actions); Cal. Civ. Proc. Code § 340(3) (one-year residual statute of limitations).

# EXHIBIT F

OPERATIONS & SUPPORT DIVISION

# Community Assistance Parking Program Information

LADOT » Operations & Support » Community Assistance Parking Program Information

## CAPP Info



The City of Los Angeles's Community Assistance Parking Program (CAPP) was created to assist homeless individuals with open or unpaid parking citations, by allowing him/her to pay in the form of community service. The Los Angeles City Council authorized the

Los Angeles Department of Transportation (LADOT) to establish CAPP on February 14, 2017.

Participants of CAPP must provide a proof of completion form to the City of Los Angeles upon completion of service hours. To estimate how many hours are required for a fine <u>click here.</u>

For more information email us at <u>Ladot.capp@lacity.org</u> or call (213) 978-4400.

☐ **What is CAPP?**

CAPP stands for the Community Assistance Parking Program. This program is administered by the Los Angeles Department of Transportation and was approved by the City Council on February 14, 2017 to allow homeless individuals do community service in lieu of paying for a parking citation.

☐ **Can I participate in the program if I'm not homeless, but I am considered low-income?**

☐ **Do all citations qualify under the CAPP Program?**

☐ **My vehicle has been towed/booted. Can I apply for CAPP?**

☐ **Can I contest my citation by calling CAPP?**

☐ **What is the maximum number of citations for which I can perform community service in one year?**

☐ **Can I perform community service for two CAPP contracts, concurrently?**

☐ **How many days do I have to complete my community service hours?**

☐ **Can CAPP provide a DMV hold release due to Los Angeles Parking Citations?**

☐ **Where can I do my community service?**

☐ **What is a service provider (SP)?**

☐ **What is a family solution center (FSC)?**

☐ **Do I have to be the registered owner of a vehicle to do community service?**

☐ **If I am undocumented, can I participate in CAPP?**

☐

☐ **Does CAPP help with housing?**

☐ **Do I need a HMIS # to enroll into CAPP?**

☐ **If I am already working with a service provider, can I do my community service with them?**

☐ **Does CAPP prevent boot and/or tows?**

☐ **CAPP Poster**

☐ **Service Provider Forms**

☐ **Map of Service Providers**

☐ **Service Provider Training**

☐ **Exit CAPP Survey**

For more information email us at Ladot.capp@lacity.org or call (213) 978-4400.



# EXHIBIT G

Moving Los Angeles Forward

# Parking Violations Bureau

(pvb_home.html)

Moving Los Angeles Forward

(pvb_home.html)

# Parking Violations Bureau

MENU

How can we help you?

# 1 866 561 9742

24 Hour Customer Care Hotline

Parking Permit Hotline:

# 1 310 843 5936

9am to 5pm

Home (pvb_home.html) > **Installment Payment Plan (IPP)**

# Installment Payment Plan (IPP)

Starting July 1, 2018, payment plans are available for indigent and eligible low-income motorists whose financial situation qualifies them under the guidelines in the Federal Register by the United States Department of Health and Human Services under the authority of paragraph (2) of Section 9902 of Title 42 of the United States Code. Qualified individuals must fall within the monthly income of 150% or less of the current poverty guidelines, and/or receive public assistance benefits.

Eligible low-income motorist may qualify for one of three available installment payment plans:

1. The **General** Installment Payment Plan

    a. Motorist may enroll at any point during the citation lifecycle.

    b. The amount due can be paid in installments over a 3-month period with a first installment of 60% of the total due, followed by two installments of 20% of the total remaining.

2. The **Extended** installment plan for motorist with under $500 in base fines.

3. The **Extended Plus** installment plan for motorist with $500 and more in base fines.

For the **Extended and Extended Plus** plans,

a. There is a $5 processing fee to enroll in these plans.

b. Motorist may enroll at any point during the citation lifecycle.

c. If the citations are over this time limit and the vehicle is on DMV hold, a motorist may still apply for the plans for a one-time only exception and an additional $5 late fee will be assessed.

d. There is a minimum payment of $20 per month and maximum installment of 24 months.

**Installment Payment Plans do NOT cancel the fine**. It simply provides some flexibility to the motorists and allows the total amount due to be paid in installments over time.

You will be required to provide detailed income information as part of your IPP request. The PVB will consider all forms of income, while determining your eligibility for the IPP.

A request for an IPP can be made by:

 Telephone (customer_care_hotline.html)

 Mail (correspondence_by_mail.html) a completed
IPP Application form (ipp_income_guidelines.pdf) form

## CONTEST A CITATION

 Pay a Parking Citation(payment.htm)

 Request an Initial Review(contest.htm)

 Request a Hearing(adminhear.htm)

 View Photos of your Parking (https://wmq.etimspayments.com/pbw/include/vpportal/la/login_page.jsp) Citation or Track Status

## REPORT A PROBLEM

 An Abandoned Vehicle(1_800.htm)

Broken Parking Meters(parkingmeters.htm)

 Damaged Signs(sign.htm)

 Faded Curb Zones(curb.htm)

 Submit Other Complaints(complaintLinks.htm)

## FIND SERVICES

 Parking Permits - Apply or Renew(permit.htm)

 Release a Booted or Towed Vehicle(boot.htm)

 Find a Public Service Center(service.htm)

 Request Pre-Payment Waiver(ticket_contest.htm)

 Participate in a Fleet Program(fleet.htm)

 Request an Installment Payment Plan(ticket_ipp.htm)

 Search for Unclaimed Property(refund.html)

Los Angeles Parking Violations Bureau

Connect with LADOT through social media

 (https://twitter.com/LADOTofficial)       (https://www.facebook.com/ladotofficial)

(https://plus.google.com/118082682853848625363/posts)

(https://instagram.com/ladotofficial/)       (https://www.youtube.com/user/LADOT2012)

FAQS (faq.htm)
Download Forms (forms.htm)
Links (links.htm)
Contact Information (phone.htm)
Disclaimer (disclaimer.html)

How can we help you?

# 1 866 561 9742

24 Hour Customer Care Hotline

---

As a covered entity under Title II of the Americans with Disabilities Act, the City of Los Angeles does not discriminate on the basis of disability and, upon request, will provide reasonable accomodation to ensure equal access to its programs, services and activities. Sign language interpreters, communication access real-time transcription, assistive listening devices, or other auxiliary aids and/or services may be provided upon request. To ensure availability, you are advised to make your request at least 72 hours prior to the meeting you wish to attend. Due to difficulties in securing sign language interpreters, five or more business days' notice is strongly recommended.

Privacy Policy (privacy_policy.html)

How can we help you?

# 1 866 561 9742

24 Hour Customer Care Hotline

FAQS (faq.htm)
Download Forms (forms.htm)
Links (links.htm)
Contact Information (phone.htm)
Disclaimer (disclaimer.html)

Los Angeles Parking Violations Bureau

Connect with LADOT through social media

 (https://twitter.com/LADOTofficial)       (https://www.facebook.com/ladotofficial) (https://plus.google.com/118082682853848625363/posts) (https://instagram.com/ladotofficial/)       (https://www.youtube.com/user/LADOT2012)

---

As a covered entity under Title II of the Americans with Disabilities Act, the City of Los Angeles does not discriminate on the basis of disability and, upon request, will provide reasonable accomodation to ensure equal access to its programs, services and activities. Sign language interpreters, communication access real-time transcription, assistive listening devices, or other auxiliary aids and/or services may be provided upon request. To ensure availability, you are advised to make your request at least 72 hours prior to the meeting you wish to attend. Due to difficulties in securing sign language interpreters, five or more business days' notice is strongly recommended.

Privacy Policy (privacy_policy.html)

# EXHIBIT H

**IPP and ELP**

# CITY OF LOS ANGELES
# APPLICATION FOR AN INSTALLMENT PAYMENT PLAN

**GUIDELINES**

Motorists who meet income eligibility requirements may be able to enroll citations in an installment payment plan (IPP). These plans allow for the payment of open citations over the course of several months. Motorists who owe $500 or less in base fines may also be eligible to enroll in an extended IPP that allows for the removal of penalties from the citations while the plan is active and provides a longer period to pay the installments. Your eligibility for this plan will be determined when you have returned this application along with the supporting documents detailed below.

Individuals must qualify using one of the following eligibility criteria:

**Eligibility Criteria # 1: Income**

Applicants must meet the guidelines in the Federal Register by the United States Department of Health and Human Services under the authority of paragraph (2) of Section 9902 of Title 42 of the United States Code. Qualified individuals must fall within the monthly income of 150% or less of the current poverty guidelines, as listed below:

| # of Persons in Household | 2022 Monthly Guidelines | 2022 Annual Guidelines |
|---|---|---|
| 1 | $1,699 | $20,385 |
| 2 | $2,289 | $27,465 |
| 3 | $2,879 | $34,545 |
| 4 | $3,469 | $41,625 |
| 5 | $4,059 | $48,705 |
| 6 | $4,649 | $55,785 |
| 7 | $5,239 | $62,865 |
| 8 | $5,829 | $69,945 |

**Eligibility Criteria #2: Proof of Public Benefits**

- Supplemental Security Income (SSI) and State Supplementary Payment (SSP)
- California Work Opportunity and Responsibility to Kids Act (CalWORKs) or a federal Tribal Temporary Assistance for Needy Families (Tribal TANF) grant program
- Supplemental Nutrition Assistance Program or the California Food Assistance Program
- County Relief, General Relief (GR), or General Assistance (GA)
- Cash Assistance Program for Aged, Blind, and Disabled Legal Immigrants (CAPI)
- In-Home Supportive Services (IHSS)
- Medi-Cal

**Eligibility Criteria #3: Homeless Management Information System (HMIS) participant**

- If you are registered in HMIS, please provide your HMIS Identification Number, which will be verified.

**Mail the completed application found on the reverse side to:**

Parking Violations Bureau
P.O. Box 30420
Los Angeles, CA 90030
1 (866) 561-9742

01/22

**IPP and ELP**

# APPLICATION FOR AN INSTALLMENT PAYMENT PLAN

*Instructions: Please fill out the application below completely. Attach supporting documentation along with your submission. Any missing information or documents may result in the denial of your request.*

| | | | |
|---|---|---|---|
| **First Name** | | | |
| **Last Name** | | | |
| **Street Address** | | | |
| **City, State, Zip** | | | |
| **Phone #** | | **License Plate** | |
| **Citation Number(s):** | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**Please check the eligibility criteria you are using (choose one):**

___ **Criteria # 1: Income – State Number of Persons in Household: _____ Documentation Required – Copies of one of the following:**

☐ Proof of income from a pay stub or another form of proof of earnings, such as a bank statement, that shows that applicant meets the income criteria.

☐ Most recent W-2

___ **Criteria #2: Public Benefits –** Documentation Required – Copies of an electronic benefits card or another card, subject to review and approval by the processing agency, of proof of applicant receiving one of the following benefits:

☐ Supplemental Security Income (SSI) and State Supplementary Payment (SSP)

☐ California Work Opportunity and Responsibility to Kids Act (CalWORKs) or a federal Tribal Temporary Assistance for Needy Families (Tribal TANF) grant program

☐ Supplemental Nutrition Assistance Program or the California Food Assistance Program

☐ County Relief, General Relief (GR), or General Assistance (GA)

☐ Cash Assistance Program for Aged, Blind, and Disabled Legal Immigrants (CAPI) In-

☐ Home Supportive Services (IHSS)

☐ Medi-Cal

___ **Criteria #3: Homeless Management Information System (HMIS) Identification Number**
Please write the number here: _____

Birth date  __ __ / __ __ / __ __ __ __  (MM/ DD/ YYYY)

If you are experiencing homelessness and are interested in completing community service in-lieu of payment, please inquire about the Community Assistance Parking Program (CAPP) or visit https://ladotparking.org/operations-support/capp-info/.

**PLEASE READ AND SIGN: I declare under penalty of making a false declaration that I am authorized to make this statement, and to the best of my knowledge it is a true, correct, and complete statement made in good faith.**

SIGNATURE: _____   DATE: _____

01/22

# EXHIBIT I

**Sec. 500. Creation and Management of Departments.**

(a)   There shall be the following departments each of which shall be under the control and management of a board of commissioners that shall be the head of the department:

Fire
Fire and Police Pensions
Library
Los Angeles City Employees' Retirement System
Police
Public Works
Recreation and Parks

(b)   There shall be the following departments each of which shall be under the control and management of a chief administrative officer, who shall be the head of the department:

City Planning
Personnel

(c)   The phrase "departments having control of their own special funds" and "departments which have control of definite revenue or funds" and other substantially equivalent terms used in the Charter shall mean the departments of Fire and Police Pensions, Los Angeles City Employees' Retirement System, Library, Recreation and Parks, and the Proprietary Departments.

# EXHIBIT J

# ARTICLE 1

# CREATION OF THE DEPARTMENT

Section
22.480   Designation of the Department.

## Sec. 22.480. Designation of the Department.

There is hereby created a Department in City government known as the Department of Transportation, hereinafter referred to as the "**Department.**"

SECTION HISTORY

Added by Ord. No. 151,832, Eff. 2-10-79. Oper. 2-25-79.