1

**DONALD W. COOK**, CSB 116666
ATTORNEY AT LAW
3435 Wilshire Blvd., Suite 2910
Los Angeles, CA 90010
(213) 252-9444 / (213) 252-0091 facsimile
E-mail: manncooklaw@gmail.com

Attorney for Plaintiffs

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BREONNAH FITZPATRICK, CHRISTOPHER OFFICER and TIMOTHY McCARTY, individuals and as class representatives,<br><br>            Plaintiffs,<br><br>vs.<br><br>CITY OF LOS ANGELES, et al.,<br><br>            Defendants. | Case No. 2:21-cv-6841 JGB (SPx)<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED CLASS ACTION CIVIL RIGHTS COMPLAINT**<br><br>Date: 8/1/22<br>Time: 9:00 a.m.<br>Ctrm: 1 (Riverside) |

00151577.WPD

1

TABLE OF CONTENTS

Page

2

3      Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

4      I.      Overview. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

5      II.     The Fourth Amendment Violations Are Adequately Pled. . . . . . . . . . . . . . 7

6              A.      The Police Cannot Invoke Community Caretaking To Enforce
                       Penal Statutes. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
7              B.      Seizing A Vehicle For Expired Registration Is Not
                       Community Caretaking. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
8              C.      Deterrence Of Future Unlawful Parking Is Not Community Caretaking12
               D.      Seizing A Vehicle For Unpaid Parking Tickets Is Not
9                      Community Caretaking. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
               E.      Seizing A Vehicle To Coerce Payment Of Purported Unpaid Fines Is Not
10                     Community Caretaking. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
               F.      No Precedent Supports Defendants' Argument. . . . . . . . . . . . . . . . 15

11

12     III.    Plaintiffs Allege Due Process Violations. . . . . . . . . . . . . . . . . . . . . . . . . 20

               A.      Plaintiffs' Standing. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
13             B.      Defendants' Policy To Impounds Vehicles To Enforce Debt Collection
                       Violates Due Process. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
14                     C.   The Allegations That Defendants Ignore Vehicle Owners Ability To
                       Pay, State A Due Process Claim. . . . . . . . . . . . . . . . . . . . . . . . . 26

15

16     IV.     The SAC Alleges Valid Takings Claims. . . . . . . . . . . . . . . . . . . . . . . . . 28

17     V.      The SAC Adequately Alleges Entity Liability. . . . . . . . . . . . . . . . . . . . . 29

       VI.     The SAC Properly Names the City, LAPD and LADOT as
18             Separate Defendants. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

19     VII.    The Removal of the "Legally Parked" Allegation. . . . . . . . . . . . . . . . . . 30

20     VIII.   No Individual Defendant Is Entitled to Qualified Immunity. . . . . . . . . . . . 30

21     IX.     Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

22

23

24

25

26

27

28

Table of Authorities

Page(s)

*Cases*

*Berger v. Philadelphia Parking Authority*,
    413 F.Supp.3d 412 (E.D. Penn. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bravo v. City of Santa Maria*,
    665 F.3d 1076 (9th Cir. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Brewster v. Beck*,
    859 F.3d 1194 (9th Cir. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-9, 16, 19

*Brewster v. City of Los Angeles*,
    No. 5:14-cv-2257 (JGB) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*Cady v. Dombrowski*,
    413 U.S. 433 (1973) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 12, 18

*Caniglia v. Strom*,
    __ U.S. __, 141 S.Ct. 1596 (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

*Cedar Point Nursery v. Hassid*,
    594 U.S. ____ (2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29

*Cholerton v. Brown*,
    No. 2:13-cv-8992-GW (JEMx) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*City of Los Angeles v. Patel*,
    576 U.S. 409 (2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Clement v. City of Glendale*,
    518 F.3d 1090 (9th Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Cotton v. City of San Bernardino*,
    No. EDCV 18-2343, 2020 WL 5900154 (C.D. Cal. 2020) . . . . . . . . . . . . . 17

*Damiano v. City and County of San Francisco*,
    2014 WL 6359763 (N.D. Cal. 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*David v. City of Los Angeles*,
    307 F.3d 1143 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Deligiannis v. City of Anaheim*,
    2010 WL 1444538 (C.D. Cal. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . 30-32

*Goichman v. Rheuban Motors, Inc.*,
    682 F.2d 1320 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Hallal v. Seroka*,
    2018 WL 3528709 (E.D. Cal. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Hallstrom v. City of Garden City*,
    991 F.2d 1473 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

00151577.WPD

*Hyde v. City of Wilcox*,
    23 F.4th 863 (9th Cir. 2022) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Karim-Panahi v. Los Angeles Police Dept.*,
    839 F.2d 621 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

*Kokesh v. Securities and Exchange Commission*,
    137 S.Ct. 1635 (2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Krimstock v. Kelly*,
    464 F.3d 246 (2nd Cir. 2006) (*Krimstock III*) . . . . . . . . . . . . . . . . . . . . . . . . 25

*Laine v. City of Livermore*,
    No. 3:15-cv-3656 VC (N.D. Cal. 2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Le v. Dep't of Parking & Traffic of San Francisco*,
    3:04-cv-3432 CRB (N.D. Cal. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Malley v. Briggs*,
    475 U.S. 335 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Miranda v. City of Cornelius*,
    429 F.3d 858 (9th Cir. 2005) . . . . . . . . . . . . . 7, 10, 12, 14-19, 22, 25, 30, 31

*Mitchell v. W.T. Grant Co.*,
    416 U.S. 600 (1974) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*North Georgia Finishing v. Di-Chem*,
    419 U.S. 601 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Oberhausen v. Louisville-Jefferson County Metro Government*,
    527 F.Supp.2d 713 (W.D. Ky. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Ordonez v. Stanley*,
    495 F.Supp.3d 855 (C.D. Cal. 2020) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*People v. Dueñas*,
    30 Cal.App.5th 1157 (2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*People v. Torres*,
    188 Cal.App.4th 775 (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Pina v. City of Long Beach*,
    No. 2:17-cv-00549, 2019 WL 6998662 (C.D. Cal. 2019) . . . . . . . . . . . . 17, 18

*Rackley v. City of New York*,
    186 F.Supp.2d 466 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Sandoval v. County of Sonoma*,
    912 F.3d 509 (9th Cir. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 12, 16, 19, 25

*Schneider v. County of San Diego*,
    28 F.3d 89 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16

00151577.WPD

*Scofield v. City of Hillsborough*,
    862 F.2d 759 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 26, 27

*Smith v. Reiskin*,
    2018 WL 7820727 (N.D. Cal. 2018) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Sniadach v. Family Corp. Of Bay View*,
    395 U.S. 337 (1969) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

*Snitko v. United States*,
    2021 WL 3139706 (C.D. Cal. 2021) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*South Dakota v. Opperman*,
    428 U.S. 364 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 18, 22, 23

*Stypmann v. City & County of San Francisco*,
    557 F.3d 1338 (9th Cir. 1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

*Tate v. District of Columbia*,
    627 F.3d 904 (D.C. Cir. 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Tounget v. City of Hemet*,
    2011 WL 13143671 (C.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . 27

*United States v. Bajakajian*,
    524 U.S. 321 (1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*United States v. Cervantes*,
    678 F.3d 798 (9th Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*United States v. Jensen*,
    425 F.3d 698 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Jones*,
    565 U.S. 400 (2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*United States v. Marshall*,
    986 F.2d 1171 (8th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Waters v. Hollywood Tow Serv.*,
    No. 2:10-cv-7568 CAS (AJWx) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**Constitutions / Statutes / Rules of Court**

Cal. Const., Art. III § 3.5 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Cal. Pen. Code § 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Cal. Veh. Code § 14602.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 29

Cal. Veh. Code § 22651 . . . . . . . . . . . . . . . . . . . . . . . 12, 14, 18, 21, 23, 25

Cal. Veh. Code § 22851 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

00151577.WPD

Cal. Veh. Code § 22852 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23-26

Cal. Veh. Code § 40000 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Cal. Veh. Code § 40000.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Cal. Veh. Code § 40000.28 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Federal Rules of Civil Procedure 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 19

Los Angeles Municipal Code § 80.76 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Title 42, United States Code § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 29

U.S. Const., Amend. IV . . . . . . . . . . . . . . . . . . . . . . . . 7-10, 13, 15-17, 19, 20, 28, 31

U.S. Const., Amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

U.S. Const., Amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

00151577.WPD

## I. Overview.

In this proposed class action lawsuit seeking damages and injunctive relief, Plaintiffs contend that a City of Los Angeles custom, policy and practice of seizing and impounding vehicles without warrants or any judicial review, to coerce the vehicles' registered owners to pay allegedly overdue parking fines, violates constitutional guarantees. Defendants now bring a Rule 12(b)(6) challenge to the Second Amended Complaint ("SAC") (ECF 70, filed 6/9/22).

Initially, defendants' misstate Plaintiffs' objective. Plaintiffs do not seek to "limit the ability of governments to fulfill their community caretaking responsibilities via parking enforcement" (ECF 71-1 @ 8:3-4); rather, Plaintiffs seek relief that mandates that defendants comply with constitutional requirements imposed by the Fourth, Fifth and Fourteenth Amendments. Furthermore, without acknowledging what they have done defendants blur into one what are actually *two* separate seizures for analysis purposes – defendants' *initial* removal of Plaintiffs' vehicles from the street, followed by defendants' *subsequent* refusal to release to Plaintiffs their respective vehicles. As will be shown, a justified initial seizure does not *ipso facto* make defendants' later refusal to release Plaintiffs' vehicles, constitutional.

Defendants' motion fails because defendants' practice of seizing and holding a person's vehicle as hostage until the owner pays the money the City says is owed for unpaid parking tickets, is a property seizure in the absence of any judicial or quasi-judicial review pre- or post-seizure. The seizures thus violate the constitution.

## II. The Fourth Amendment Violations Are Adequately Pled.

Both the initial decision to remove from the street Plaintiffs' vehicles *and* the later refusal to release to Plaintiffs their vehicles, were separate Fourth Amendment seizures. *E.g., Miranda v. City of Cornelius*, 429 F.3d 858, 862 (9th Cir. 2005) ("The impound of an automobile is a seizure within the meaning of the Fourth Amendment."); *Brewster v. Beck*, 859 F.3d 1194, 1196-97 (9th Cir. 2017) ("The Fourth Amendment doesn't become irrelevant once an initial seizure has run its course.

[Citations omitted.] A seizure is justified under the Fourth Amendment only to the extent that the government's justification holds force. Thereafter, the government must cease the seizure or secure a new justification."); *accord Snitko v. United States*, 2021 WL 3139706 *4 (C.D. Cal. 2021) (Citing *Brewster*, Judge Klausner holds that "the Fourth Amendment is implicated by the Government's delay in returning seized property, irrespective of the Government's initial basis for seizing the property.").

Since the initial seizures of Plaintiffs' vehicles and the later refusals to release the vehicles were without warrants, defendants must show justification for *both* seizures. *City of Los Angeles v. Patel*, 576 U.S. 409, 419 (2015). Moreover, a lawful initial seizure does not immunize from constitutional challenge the later refusal to release the vehicle. *Brewster*, *supra* (Defendants seized initially lawfully seized the car because its driver was unlicensed and no licensed driver was available to take possession; however, defendants' later refusal to release the car to its registered owner and licensed driver Ms. Brewster violated the Fourth Amendment.).

At some length and without distinguishing between the initial seizure versus the later refusal to release the vehicles, defendants argue community caretaking justified the warrantless seizures. ECF 71-1 @ 10:19-15:14. The argument fails:

● At the time of the initial seizures, all Plaintiffs' vehicles were parked such that they were "not impeding traffic or jeopardizing public safety and convenience," "not blocking a driveway or crosswalk or otherwise preventing the efficient movement of traffic," and were "not creating a public safety hazard, nor [were they] target[s] for vandalism or theft." ECF 70, SAC ¶¶17, 21 & 26. Given these allegations, defendants cannot argue the initial seizures were justified because the vehicles, if not towed, presented a traffic hazard of some type or were at some heightened risk of vandalism or theft.[1] *Hyde v. City of Wilcox*, 23 F.4th 863, 869 (9th Cir. 2022) (SAC's allegations

---

[1] There is an additional fact in the case of Plaintiff McCarty. Mr. McCarty, a licensed driver, was working on his car when LAPD officers towed it (because of unpaid parking tickets and expired registration). SAC ¶24. Thus, even if the car was parked so as to constitute of hazard of some type (it wasn't so parked) Mr. McCarty

must be accepted as true). Therefore, there was no community caretaking justification for removing Plaintiffs' vehicles from the street.

● Since all Plaintiffs were licensed drivers and were their respective vehicles' registered owner, defendants' refusal to immediately release the cars to Plaintiffs upon their demand was another Fourth Amendment violation. *Brewster*, 859 F.3d at 1196-97; *Sandoval v. County of Sonoma*, 912 F.3d 509, 516 (9th Cir. 2018).

Despite the foregoing, defendants argue they committed no Fourth Amendment violations because seizing a vehicle for unpaid parking tickets and/or expired registration falls with the ambit of the community caretaking exception to the warrant requirement. ECF 71-1 @ 11:5-13:6. In pushing this argument, defendants seriously and inexcusably distort and misstate the community caretaking doctrine. And the principal authorities defendants rely, besides being non-precedent, are, to the extent even applicable to the facts of this case, contrary to controlling Supreme Court and Ninth Circuit precedent.

**A.  The Police Cannot Invoke Community Caretaking To Enforce Penal Statutes.**

Community caretaking has its genesis in *Cady v. Dombrowski*, 413 U.S. 433 (1973). *Cady* explained that in contrast with federal law enforcement, local police will frequently be called upon to seize vehicles to maintain traffic safety and protect the vehicle; hence, the Court recognized a "community caretaking" function divorced from the enforcement of criminal laws:

> Some such contacts [between local police and vehicle operator] will occur
> because the officer may believe the operator has violated a criminal statute,
> but many more will not be of that nature. Local police officers, unlike
> federal officers, frequently investigate vehicle accidents in which there is
> no claim of criminal liability and engage in what, for want of a better term,

could have immediately moved it to a safe location.

00151577.WPD

may be described as *community caretaking functions, **totally** divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute.*

413 U.S. at 441 (emphasis added); *see also* 413 U.S. at 442-43 (car towed because it was "disabled" and thus "a nuisance along the highway" while the subsequent vehicle search which uncovered the incriminating firearm, was not done to find evidence of crime but only to secure property found within the vehicle).

In *Miranda v. City of Cornelius*, 429 F.3d 858 (9th Cir. 2005), the Ninth Circuit elaborated on this crucial difference between vehicle seizures motivated by community caretaking versus those effected in the course of *criminal* law enforcement:

The police's authority to search and seize property when acting in its role as "community caretaker" has a different source than its authority to search and seize property to investigate criminal activity. The reasonableness of a seizure under the "caretaker" function differs from the bright-line rule concerning probable cause in the criminal context.[footnote omitted] "The standard of probable cause is peculiarly related to criminal investigations, not routine, non-criminal procedures. The probable-cause approach is unhelpful when analysis centers upon the reasonableness of routine administrative caretaking functions, particularly when no claim is made that the protective procedures are a subterfuge for criminal investigations." *South Dakota v. Opperman*, 428 U.S. 364, 371, 96 S.Ct. 3092, 49 L.Ed.2d 1000, n. 5 (1976).

429 F.3d at 863.

Consequently, if the police seize a car claiming community caretaking but in reality the police effected the seizure to search for evidence of crime, the seizure *violates* the Fourth Amendment. *United States v. Cervantes*, 678 F.3d 798, 807 (9th Cir. 2012) ("The happy accident of not finding Cervantes's driver's license [thus justifying a vehicle impound under Cal. Veh. Code § 14602.6] cannot excuse the officers'

-10-

00151577.WPD

[criminal] investigatory motive for the vehicle impoundment and inventory search.").

**B.   Seizing A Vehicle For Expired Registration Is Not Community Caretaking.**

California has three types of "[c]rimes and public offense": (1) felonies; (2) misdemeanors; and (3) infractions. Cal. Pen. Code § 16. Operating or parking a vehicle on a public street without current valid registration is a violation of Cal. Veh. Code § 40000.[2] A violation of § 40000 is either an infraction or misdemeanor depending on the registered owner's conviction record. Cal. Veh. Code § 40000.1 (Unless otherwise stated, violation of vehicle code is an infraction)) § 40000.28 (Violation of § 40000 is a misdemeanor if in the 12 months preceding the § 40000 violation, the person has three or more prior violations of the vehicle code or of a local ordinance adopted pursuant to the vehicle code.).

Defendants' argument that towing the vehicles owned by Plaintiffs McCarty and Fitzpatrick was justified under the community caretaking doctrine because neither vehicle had current valid registration as required by § 40000, ECF 71-1 @ 13:9-13, fails. Section 40000 is a *penal* statute; hence, towing a car for an alleged violation of § 40000 is seizing the vehicle *in order to enforce a penal statute*. But the community caretaking function is "*totally divorced* from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *Cady*, 413 U.S. at 441 (emphasis added); *see also South Dakota v. Opperman*, 428 U.S. 364, 371 (1976) (Disapproving use of community caretaking as "a subterfuge for criminal

---

[2] In relevant part § 4000, subdivision (a)(1), states:

A person shall not drive, move, or leave standing upon a highway, or in an offstreet public parking facility, any motor vehicle, trailer, semitrailer, pole or pipe dolly, or logging dolly, unless it is registered and the appropriate fees have been paid under this code or registered under the permanent trailer identification program, except that an off-highway motor vehicle which displays an identification plate or device issued by the department pursuant to Section 38010 may be driven, moved, or left standing in an offstreet public parking facility without being registered or paying registration fees.

00151577.WPD

investigation."); *Miranda*, 429 F.3d at 864 (explaining that community caretaking is not a function of criminal law enforcement).

The argument that the phrase "illegally parked" as used in *Miranda* (429 F.3d at 867) includes a car parked with expired registration even though the car is not impeding traffic or otherwise presenting a traffic hazard (ECF 71-1 @ 10:23-24) is meritless. Regarding community caretaking, *Miranda's* "illegally parked" means a car parked so as to " 'impede traffic [or] threaten public safety . . .' " (*quoting Hallstrom v. City of Garden City*, 991 F.2d 1473 (9th Cir. 1993)), meaning if left on the road, the vehicle "jeopardize[s] public safety and the efficient movement of vehicular traffic." *Miranda*, 429 F.3d at 864 (*quoting South Dakota v. Opperman*, 428 U.S. at 368-69). Note too *Miranda's* reliance (at page 864) on *United States v. Jensen*, 425 F.3d 698, 705 (9th Cir. 2005) in which *Jensen* described community caretaking as the "doctrine allow[ing] law enforcement officers to seize and remove any vehicle which may impede traffic, threaten public safety, or be subject to vandalism."

Further support for the above is found in state law. As the Court previously noted, 4/8/22 Order @ 5 (ECF 60), C.V.C. § 22651(o)(1)(A) *precludes* towing a vehicle for expired registration of less than six months. This limitation is the California Legislature's recognition that a vehicle on the street with expired registration is *not* a *per se* traffic hazard. Moreover, as applied to the towing of Ms. Fitzpatrick's car, state law barred towing it for an alleged § 40000 violation. 4/8/22 Order @ 5 (ECF 60).

**C. Deterrence Of Future Unlawful Parking Is Not Community Caretaking.**

Defendants argue that towing vehicles is necessary to "deter[] [] parking illegally." ECF 71-1 @ 11:15-16. But Ninth Circuit law is clear – deterrence *cannot* constitute a community caretaking justification. *Miranda*, 429 F.3d at 866 ("deterring . . . illegal activity in the future" is inconsistent with community caretaking); *Sandoval v. County of Sonoma*, 912 F.3d at 516 ("wrong to rely on [] deterrence" to justify a vehicle impound).

///

00151577.WPD

**D.   Seizing A Vehicle For Unpaid Parking Tickets Is Not Community Caretaking.**

A traffic violation that violates some provision of the City of Los Angeles' Municipal Code is either a misdemeanor or infraction. L.A.M.C. § 80.76(b) ("Except as provided elsewhere, any person violating any of the provisions of this chapter shall be guilty of a misdemeanor . . ."); § 80.76.1 ("Notwithstanding Section 80.76 of the Los Angeles Municipal Code, violation of any of the sections or subsections of the Los Angeles Municipal Code described herein shall be an infraction: [list of various traffic-related offenses including parking violations]").

As already explained, defendants cannot invoke community caretaking to justify enforcement of traffic related offenses proscribed by the L.A.M.C. since the offenses are penal statutes, *i.e.,* either misdemeanor or infractions. *See also* this Court's discussion at pp. 4 & 5 of its 4/8/22 Order (ECF 60), and in particular the following statement at page 5:

> As it is apparently not obvious, the Court has focused and continues to focus its analysis on whether any of the violations include penalties that could subject Plaintiff's vehicle to lawful tow and impound under the community caretaking doctrine. *They do not.* [Emphasis added.]

**E.   Seizing A Vehicle To Coerce Payment Of Purported Unpaid Fines Is Not Community Caretaking.**

Defendants are arguing for an expansive reading of Fourth Amendment community caretaking to cover debt collection. Such a reading conflicts with the Supreme Court's recent decision in *Caniglia v. Strom*, __ U.S. __, 141 S.Ct. 1596 (2021). There, the police seized firearms found inside a person's home because the firearms' owner was taken into custody for a psychiatric evaluation. The Supreme Court rejected the First Circuit's attempt at interpreting community caretaking to include a catch-all exception for seizing property in order to protect the community:

*Cady's* [*Cady v. Dombrowski*, 413 U.S. 433 (1973)] unmistakable

-13-

distinction between vehicles and homes also places into proper context its reference to "community caretaking." This quote comes from a portion of the opinion explaining that the "frequency with which ... vehicle[s] can become disabled or involved in ... accident[s] on public highways" often requires police to perform noncriminal "community caretaking functions," such as providing aid to motorists. 413 U.S. at 441, 93 S.Ct. 2523. But, this recognition that police officers perform many civic tasks in modern society was just that-a recognition that these tasks exist, and not an open-ended license to perform them anywhere.

*Id.* at 1599-1600.

Plainly, *Caniglia* read the community caretaking doctrine as born out of the necessity for the police to promptly take possession of a vehicle which if not seized, poses an *immediate* threat to public safety and/or is at risk of vandalism, etc. *Miranda*, 429 F.3d at 864 (explaining community caretaking as set forth in *Opperman*). Seizing a vehicle to collect a debt obviously serves no such interest.

Moreover, as this the Court correctly noted in its 4/8/22 Order at page 4, towing a vehicle because its registered owner has unpaid parking fines is *not* a penalty or punitive measure authorized by the Los Angeles Municipal Code. And to the extent defendants rely on state law for towing a vehicle, to wit C.V.C. § 22651(i) (five or more unpaid parking citations) or C.V.C. § 22651(o)(1)(A) (expired registration in excess of six months), in the absence of establishing community caretaking justification, the reliance on state law cannot justify towing the vehicle. *Miranda*, 429 F.3d at 864 ("We begin with the premise, apparently not recognized by the Defendants, that the decision to impound pursuant to the authority of a city ordinance and state statute does not, in and of itself, determine the reasonableness of the seizure under the Fourth Amendment, as applied to the states by the Fourteenth Amendment.").[3]

---

[3]    In a case raising the same issue, Judge Jeffrey S. White of the Northern District reached the same conclusion, i.e., debt-collection does not constitute community

00151577.WPD

There is yet another fundamental problem with defendants seizing and impounding vehicles as hostages unless and until their owners make payments on tickets that the City demands. The vehicle seizures, both initial and ongoing, are effected without any judicial review. When government officials seize property to enforce collection of purported debt and such seizures are effected without *any* judicial review, the seizures violates the constitution. See Part III(B), *infra*.

## F.  No Precedent Supports Defendants' Argument.

First, defendants have not cited a single Ninth Circuit decision post-*Miranda v. City of Cornelius* in which the court held that community caretaking justified seizing a vehicle which was not a traffic hazard and not at risk of vandalism or theft.

Defendants cite *Schneider v. County of San Diego*, 28 F.3d 89 (9th Cir. 1994). But *Schneider* is inapplicable for it was later superseded by Supreme Court and Ninth Circuit decisions. In *Schneider*, the seizure and removal of the vehicles from plaintiff's property did not raise a Fourth Amendment issue as the seizures "did not impinge on any legitimate privacy interest" while the seizures "were authorized pursuant to the police power of the State of California." 28 F.3d at 92.[4]

On *Schneider's* first point – no legitimate privacy interest – Supreme Court has since held that a Fourth Amendment claim is not limited to a person's reasonable expectation of privacy; when state agents commit a common law trespass that suffices

---

caretaking:

> Defendants argue that their impoundment of the car was proper in an effort to secure repayment of the debt owed by Mr. Kayode for his previous parking tickets under Vehicle Code Section 22651(i). . . . Towing of the vehicle pursuant to the authority of an ordinance permitting seizure for repeated non-payment of parking fees does not, in and of itself, justify the seizure.

*Smith v. Reiskin*, 2018 WL 7820727 *3 (N.D. Cal. 2018).

[4] The county (by and through an agent) also dismantled or destroyed the vehicles which eventually resulted in the Panel finding a due process violation and Fifth Amendment taking as a matter of law. *Schneider v. County of San Diego*, 285 F.3d 784, 788 (9th Cir. 2002).

to trigger the Fourth Amendment. *United States v. Jones*, 565 U.S. 400, 411 (2012).

Turning to *Schneider's* second point – seizures were authorized by state law – the later decisions in *Miranda*, *Brewster*, and *Sandoval* hold that state law in and of itself cannot determine Fourth Amendment reasonableness.

It is thus unsurprising that this Court has already rejected defendants' reliance on *Schneider*. *See* ECF 48, 1/20/22 Order @ page 6, fn 3.

Nor are the Ninth Circuit's decisions in *Scofield v. City of Hillsborough*, 862 F.2d 759 (9th Cir. 1988) and *Clement v. City of Glendale*, 518 F.3d 1090 (9th Cir. 2008) applicable. In *Scofield*, the police seized and towed the vehicle because it was illegally parked and unregistered. After paying the fines and registering his vehicle, the plaintiff reclaimed possession. There was no prolonged seizure, whether 30 days or otherwise. The issues were, was plaintiff entitled to a hearing *before* the police towed the vehicle (he was not); was the plaintiff entitled to notice *before* the towing (he was not); and was he entitled to an immediate hearing before he paid the tow charges, rather than afterwards (he was not). 862 F.2d at 762-65. Plainly, *Scofield* was all about timing of notice and hearing, not whether a lawfully parked vehicle seized without a warrant violated the Fourth Amendment.

Turning to *Clement*, that too was a due process case. 518 F.3d at 1092. Moreover, in its due process analysis, the panel found "the costs and burdens on the car owner associated with a tow can only be justified by conditions that make a tow necessary and appropriate, such as that the car is parked in the path of traffic, blocking a driveway, obstructing a fire lane or appears abandoned." *Id.* at 1094. Clearly consistent with *Miranda*, *Clement* was describing community caretaking. Lastly, *Clement's* statement that "a tow *may* also be appropriate where there are no current registration stickers and police can't be sure that the owner won't move or hide the vehicle, rather than pay the fine for illegal parking" (emphasis added) is dicta, dicta *Clement* supported by citing the inapplicable pre-*Miranda Scofield* decision. 518 F.3d at 1094-95.

The district court rulings defendants cite (mostly by magistrate judges and

involving *pro se* plaintiffs) either do not discuss or misstate *Miranda* and Supreme Court authorities on community caretaking, by broadening the justification to include deterrence, enforcement of penal statutes and/or collection of debt (e.g., " '(p)arking enforcement' " constitutes community caretaking justification [ECF 71-1 @ 12:4-5]). None of the decisions defendants cite are precedent nor are they persuasive:

● *Cotton v. City of San Bernardino*, No. EDCV 18-2343, 2020 WL 5900154 (C.D. Cal. 2020) (Magistrate Judge Rosenberg). In discussing the plaintiff's wrongful vehicle seizure, the court noted that impounding vehicles in the absence of community caretaking (which the court defined as "imped[ing] traffic or threaten[ing] public safety") violates the Fourth Amendment. But the complaint's allegations were unclear as to the factual basis for the impound and thus the court could not resolve the issue. Instead, the court dismissed the claim because the plaintiff "had not sufficiently alleged a [*Monell*] basis for asserting this Fourth Amendment claim against the County." 2020 WL 5900154 @ *7-*8.

● *Pina v. City of Long Beach*, No. 2:17-cv-00549, 2019 WL 6998662 (C.D. Cal. 2019) is a ruling by Magistrate Judge Kewalrami. The case hurts rather than help defendants. On the *pro se* plaintiff's Fourth Amendment claim, the court held that towing plaintiff's car on account of unpaid parking citations was not justified "as a valid administrative penalty permitting the civil forfeiture." *Id.*, at *8; *see also* discussion at *9-*11.[5]

● *Cholerton v. Brown*, No. 2:13-cv-8992-GW (JEMx) arises from a *pro se* plaintiff's lawsuit claiming, *inter alia*, an unlawful vehicle impound. Magistrate Judge McDermott's ruling (ECF 26 filed 5/16/14) upholding the impound for expired

---

[5] It is correct that in *Pina*, the court stated the second tow was justified by community caretaking because the registration had been expired for more than a year and plaintiff had continued to drive the vehicle with expired registration. 2019 WL 6998662 @ *12-*13. That conclusion, however, is inconsistent community cartaking as defined by *Cady*, *Opperman* and *Miranda*. See discussion above at Part II(A)-(E); *see also* 429 F.3d at 866 ("deterring . . . illegal activity in the future" not consistent with community caretaking).

registration does not say how long the registration was expired, nor does the ruling acknowledge the police "cannot tow on less than six months expired registration" provision of C.V.C. § 22651(o)(1)(A). But even assuming the registration was expired for more than six months, the magistrate judge's suggestion that *Miranda* would uphold the impound is a serious misstatement of *Miranda. See supra* Part II(A)-(B).

●  *Waters v. Hollywood Tow Serv.*, No. 2:10-cv-7568 CAS (AJWx), involved a *pro se* plaintiff declared a vexatious litigant (ECF 81 filed 4/25/11). To the extent one can read the magistrate judge's ruling that impounding a vehicle merely because a parking citation constitutes community caretaking justification (ECF 97 @ page 7) the ruling is contrary to Supreme Court and Ninth Circuit precedent (*supra* at Part II(A)-(C)).

●  *Laine v. City of Livermore*, No. 3:15-cv-3656 VC (N.D. Cal. 2016). Another *pro se* plaintiff claiming wrongful vehicle impound (among other claims). The district judge stated the impound was "probably . . . reasonable" to protect the vehicle from vandalism or theft. In apparent dictum, however, the court added that given plaintiff's avowed intention to *never* register his vehicle, that too may have justified the impound. ECF 73 filed 5/23/16 @ page 2.

●  *Le v. Dep't of Parking & Traffic of San Francisco*, 3:04-cv-3432 CRB (N.D. Cal. 2005), was a Northern District of California lawsuit prosecuted by a *pro se* plaintiff. The district court's "Memorandum and Order" granting a Rule 12(b)(6) motion was filed January 24, 2005, *i.e.,* some ten months before the Ninth Circuit's *Miranda* decision and of course years before *Brewster*, and the *Le* plaintiff did not appeal.

The out-of-circuit decisions defendants cite are similarly unpersuasive. In *Tate v. District of Columbia*, 627 F.3d 904 (D.C. Cir. 2010), the court stated "Tate is correct that booting is not about caretaking: it 'does not promote the flow of traffic.' *Saukstelis v. City of Chicago*, 932 F.2d 1171, 1173 (7th Cir.1991). Rather, as noted earlier, booting and subsequent impoundment, like other ticketing measures, have a deterrent and remedial purpose-they deter and punish delinquent payment of fines." 627 F.3d at 911,

fn7. But as this Court previously ruled "Courts in this circuit consistently repudiate deterrence rationales raised in the community caretaking context." ECF 48, 1/20/22 Order @ page 7, fn4.

Moreover, *Tate* and *Berger v. Philadelphia Parking Authority*, 413 F.Supp.3d 412 (E.D. Penn. 2019) found the seizures lawful as forfeitures. 413 F.Supp.3d at 418. But that is contrary to *Brewster* and *Sandoval* (forfeiture of vehicles in the absence of judicial review is unconstitutional). Similarly, in *Oberhausen v. Louisville-Jefferson County Metro Government*, 527 F.Supp.2d 713, 727 (W.D. Ky. 2007), the district court found that a state law authorizing vehicle seizures sufficed to comply with the Fourth Amendment. That too is contrary to Ninth Circuit law. *Miranda,* 429 F.2d at 864. And for reasons this Court expressed in its 1/20/22 Order @ page 6, fn 3 (ECF 48) *Rackley v. City of New York*, 186 F.Supp.2d 466 (S.D.N.Y. 2002) is inapplicable given that it relies upon similar reasoning.

Lastly, *United States v. Marshall*, 986 F.2d 1171 (8th Cir. 1993) offers no support for defendants' position. *Marshall's* issue was not the initial seizure of the defendant's vehicle; it was the inventory search the police performed after impounding the vehicle. 986 F.2d at 1174. The Eighth Circuit questioned whether the inventory search was pursuant to a standardized procedure, and not a "ruse for general rummaging in order to discover incriminating evidence." 986 F.2d at 1175. The court's statement that there was "no dispute that the vehicle was properly impounded" because "Officer Wuellner testified that department policy requires the impoundment of vehicles that have ten unpaid parking tickets," was simply a recital of an undisputed fact the defendant never disputed or claimed violated the Fourth Amendment. Rather, defendant challenged (successfully) the subsequent inventory search as having violated the Fourth Amendment. 986 F.2d at 1175-76.

///

///

///

00151577.WPD

## III. Plaintiffs Allege Due Process Violations.

### A. Plaintiffs' Standing.

Defendants' assertion that Plaintiffs lack standing to allege the due process violation because they have not stated in their SAC that they have been unable to register their vehicles, ECF 71-1 @ 18:9-19:4) is meritless. The SAC alleges defendants seized their vehicles and would not allow release the vehicles until Plaintiffs paid to the City the money the City says it is owed for parking tickets. SAC ¶¶ 14, 16, 18, 22, 24 and 27.[6]

### B. Defendants' Policy To Impounds Vehicles To Enforce Debt Collection Violates Due Process.

The gravamen of the due process claim is that the City places DMV holds on Plaintiffs' and class members' vehicle registrations to deny Plaintiffs and class members the ability to obtain current registration unless and until they pay the City what it claims it is owed for unpaid parking tickets. SAC ¶65 ("[D]efendants are holding as hostage the vehicles belonging to Plaintiffs and class members unless and until Plaintiffs and class members pay up."). The hold on vehicle registration – which arises from the City's claim of unpaid parking tickets – then subjects the vehicle to the City seizing the vehicle under C.V.C. § 22651(i) (assuming five or more unpaid tickets) or § 22651(o)(1)(A) (assuming registration is expired for more than six months). Moreover, the owner cannot reclaim her vehicle unless she secures current registration which first requires that the City issue a release of the DMW hold, a hold the City will not release until the vehicle owner pays the money the City demands for parking tickets. So without judicial review of any type whatsoever, the City seizes *and* holds vehicles, refusing to release

---

[6] Should defendants argue in reply that the SAC also alleges these plaintiffs had their vehicles released without having to pay all the fees, those special releases occurred based on the specific request by plaintiffs' counsel (as stated at SAC ¶¶ 19, 23 & 28), and per the Vehicle Code as explained herein, typically a person cannot register their vehicle until all citations are paid and a vehicle will not be released until the car is registered. See for example, SAC ¶24 ("the vehicle did not have current registration because the LADOT had put a hold on the registration on account of the unpaid parking citations.").

00151577.WPD

them *until* the City is paid the money the City says it is owed. In more colloquial terms, the City grabs a vehicle as hostage or leverage to coerce the vehicle's owner to pay money the City wants. Luca Brasi-styled enforcement without the bloodshed.[7]

Such extremely coercive policy or practice of debt collection under legal process devoid of *any* judicial review, has long been held to violate due process.

In *North Georgia Finishing v. Di-Chem*, 419 U.S. 601 (1975), the question was whether a Georgia garnishment statute violated due process by permitting a court clerk to issue a writ of garnishment in a pending lawsuit without participation by judge, and simply based on an affidavit of plaintiff or his attorney containing conclusory allegations and which prescribed the filing of a bond as only method of dissolving the garnishment, a garnishment which deprived a defendant of their use of property in the garnishee's hands pending litigation. The absence of any judicial review, the Court held, violated procedural due process. 419 U.S. at 606.

Also on point is the Court's decision in *Sniadach v. Family Corp. Of Bay View*, 395 U.S. 337 (1969). There, the plaintiff-creditor, a holder of a promissory note on which the creditor claimed the borrower defaulted, secured a wage garnishment order without obtaining judicial review; the garnishment remaining in effect until resolution of the underlying debt collection lawsuit. 395 U.S. at 338-39.[8] Because of the "tremendous hardship" imposed by the prejudgment wage garnishment, "as a practical matter [the garnishment may] drive [the] wage-earning family to the wall." 395 U.S. 339, 341-42. Thus, this garnishment in the absence of judicial review violated due process. *Id.*, at 342; *see Mitchell v. W.T. Grant Co.*, 416 U.S. 600, 614 (1974) (explaining *Sniadach*); *see also* 416 U.S. at 616-17 (Upholding Louisiana's pre-judgment property seizure statute because unlike those challenged in other cases,

---

[7] In the 1972 film *The Godfather*, Luca Brasi was the Corleone family's ruthless enforcer whenever Don Corleone needed to "make [someone] an offer he can't refuse."

[8] "What happens in Wisconsin is that the clerk of the court issues the summons at the request of the creditor's lawyer; and it is the latter who by serving the garnishee sets in motion the machinery whereby the wages are frozen."

Louisiana's law required a hearing before a neutral *judicial* officer and "judicial authorization.").

The City's debt collection policy is as pernicious as the state laws struck down in *Sniadach* and *Mitchell*. The City seeks to enforce collection on a claimed debt by seizing one's vehicle, personal property *not* subject to a contractual security interest in the City's favor (thus precluding the City's status as "Repo Man"). Moreover, because "[a] person's ability to make a living and his access to both the necessities and amenities of life may depend upon the availability of an automobile when needed," *Stypmann v. City & County of San Francisco*, 557 F.2d 1338, 1342-43 (9th Cir. 1977), the City's policy of seizing the vehicles can "drive" "to the wall" their owners and families every bit as much as the "wage-earning family" referenced in *Sniadach*.

Defendants' reliance on *South Dakota v. Opperman*, 428 U.S. 364 (1976) to argue that impounding vehicles for debt collection on five or more unpaid parking tickets constitute community caretaking justification, ECF 71-1 @ 12:4-5, is meritless. *Opperman* made no such pronouncement; rather as the full quote makes clear, "community caretaking" means – as *Miranda v. Cornelius* would say nearly 30 years later – *"public safety and the efficient movement of vehicular traffic"*:

> In the interests of public safety and as part of what the Court has called "community caretaking functions," *Cady v. Dombrowski, supra*, 413 U.S. at 441, 93 S.Ct. at 2528, automobiles are frequently taken into police custody. Vehicle accidents present one such occasion. To permit the uninterrupted flow of traffic and in some circumstances to preserve evidence, disabled or damaged vehicles will often be removed from the highways or streets at the behest of police engaged solely in caretaking and traffic-control activities. Police will also frequently remove and impound automobiles which violate parking ordinances and which thereby jeopardize both the public safety and the efficient movement of vehicular traffic. The authority of police to seize and remove from the streets

1         vehicles impeding traffic or threatening public safety and convenience is

2         beyond challenge.

3 428 U.S. at 368-69.

4         The "parking ordinances" to which *Opperman* referred are those concerning

5 "public safety and the efficient movement of vehicular traffic."[9] By their express terms

6 neither C.V.C. § 22651(i) nor C.V.C. §22651(o) have anything to do with "public safety

7 and the efficient movement of vehicular traffic;" rather, the statutes grant discretionary

8 authority for seizing and impounding a vehicle to hold it hostage until the vehicle's

9 owner pays what government officials say the seizing authority is owed.

10         Should defendants claim that the post-seizure hearing the City provides pursuant

11 to C.V.C. § 22852 satisfies due process for this type of vehicle seizure – towing and

12 impounding the vehicle as leverage to coerce its owner to pay the money the City claims

13 it is owed – the argument fails. In its present form § 22852 was enacted in 1979.[10] The

14 Legislature enacted § 22852 and its storage hearing requirement in response to

15 *Stypmann v. City & County of San Francisco*, 557 F.3d 1338 (9th Cir. 1977).[11]

16 *Stypmann* concerned vehicles removed from the street as *stored* vehicles, *i.e.,* an owner

17 could immediately reclaim their vehicle upon proof of ownership and payment of

18 storage fees. While *Stypmann* did not dispute the police power to have vehicles towed

19 for community caretaking reasons (blocking traffic, etc.) 557 F.3d at 1342 n.10, the

21      [9] In *Opperman*, the vehicle was found parked at 3 a.m. in an area where there was

22 no parking from 2 a.m. to 6 a.m., and was given a notice on the windshield that "vehicles in violation of any parking ordinance may be towed from the area." 428 U.S. at 365.

24      [10] S.B. 848, 1979 Leg., Reg. Sess. (Cal. 1979), 1979 Cal. Stat. 3491 (codified as

25 amended at Cal. Vehicle Code § 22852 (West 2021)). Before 1979, § 22852 had no requirement for a hearing of any type; the statute only required that the vehicle owner be notified his vehicle had been towed.

26      [11] S.B. 848, 1979 Leg., Reg. Sess. (Cal. 1979) ("It is the intent of the Legislature,

27 in enacting this act, to ensure that a person whose unattended vehicle has been ordered by an authorized member of a public agency is provided opportunity for a hearing to satisfy due process as mandated in a recent Appellate Court Decision, Stypmann vs.

28 City and County of San Francisco.").

00151577.WPD

court held that owners were entitled to an "early hearing" in less than five days at which they could "test the factual basis of the tow" without first having to pay the tow charges, etc. *Id.*, at 1343-45.

Plainly, in *Stypmann* the issue was about when and under what circumstances the vehicle owner could challenge the obligation to pay *towing* and *storage* charges in order to secure the vehicle's release; *permanent* deprivation of one's vehicle (for failure to pay allegedly unpaid parking tickets) was not on the table.[12] Nor was there any claim that the local government towed and impounded the vehicles to coerce vehicle owners to pay money the local government claimed it was owed, the policy at issue in the present case. Additionally, for Plaintiffs herein and class members, the § 22852 hearing officer is *not* a disinterested official – he is a *City* employee who decides if Plaintiffs and class members must pay the money the hearing officer's *employer* the City says it is owed. Consequently, the § 22852 storage hearing does not satisfy due process for seizing vehicles to enforce debt collection.

Additionally, the hearing officer may (and probably would) claim he has *no authority* to address the issue of the owner's obligation to pay the unpaid tickets; for the hearing officer's only concern is whether the vehicle was towed in compliance with subdivision (i) (unpaid parking tickets) or subdivision (o)(1)(A) (vehicle registration more than six months expired) of C.V.C. § 22651. The California Constitution, Art. III § 3.5(c), states that the § 22852 City hearing officer cannot

> declare a statute unenforceable, or to refuse to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement of such statute unless an appellate court has made a determination that the enforcement of such statute is prohibited by federal law or federal regulations.

---

[12] In the present case, if Plaintiffs and class members do not reclaim their vehicles within a period of about six to eight weeks, the vehicle is sold pursuant to a statutory lien in favor of the tow company for charges owed the tow company. *See* Cal. Veh. Code § 22851(a); SAC ¶15.

00151577.WPD

Since no court has declared either subdivisions (i) or (o)(1)(A) unconstitutional (and likely never will[13]) the § 22852 hearing officer – a non-judicial City employee – cannot adjudicate the constitutionality of imposing a subdivision (i) or (o)(1)(A) vehicle impound in the circumstances of the seizures of Plaintiffs' and class members' vehicles. *Ordonez v. Stanley*, 495 F.Supp.3d 855, 864-65 (C.D. Cal. 2020); \*Krimstock v. Kelly*, 464 F.3d 246, 255 (2nd Cir. 2006) (*Krimstock III*) (In an opinion by then-Circuit Judge Sotomayor, Second Circuit holds that the state must provide "some immediate judicial review of [a prolonged vehicle] retention."); *Sandoval v. County of Sonoma*, 912 F.3d 509, 521 (9th Cir. 2018) (Watford, J., concurring and dissenting in part) (Judge Watford concludes that § 22852 storage hearings for 30 day vehicle impounds do not comport with due process because of the absence of impartial judicial or quasi-judicial review.).

If in their reply defendants argue that § 22852 storage hearings as applied to Plaintiffs and class members satisfy due process based on *David v. City of Los Angeles*, 307 F.3d 1143 (9th Cir. 2002), *Scofield v. City of Hillsborough*, 862 F.2d 759 (9th Cir. 1988), and/or *Goichman v. Rheuban Motors, Inc.*, 682 F.2d 1320 (9th Cir. 1982) (defendants have made this argument in other cases) the argument fails. None of those cases concerned the issue this case raises – the City of Los Angeles seizing and *impounding* vehicles as leverage to coerce their owners to pay money the City says it is owed. Rather, the decisions concerned the payment of charges for the towing and *storage* of vehicles that could not be safely left on the street and hence, for community caretaking reasons the police towed and *stored* (not impounded) the vehicles. In all cases the vehicles were subject to prompt release upon payment of only towing and storage charges; none were vehicles seized to punish or deter the vehicle owners.

Here, by contrast, the City admits it impounded the vehicles to "deter[] [] parking illegally," ECF 71-1 @ 11:15-16, and seeks to punish Plaintiffs and class members for

---

[13] Although by their respective terms neither subdivision requires community caretaking justification, the absence is remedied by case law imposing a community caretaking requirement. *E.g., Miranda v. City of Cornelius*, *supra*; *People v. Torres*, 188 Cal.App.4th 775, 792 (2010).

1    being scofflaws (ECF 71-1 @ 11:5-6).[14]

2         **C. The Allegations That Defendants Ignore Vehicle Owners Ability To Pay,**

3         **State A Due Process Claim.**

4         Defendants argue there is no due process right to have one's ability to pay be

5    taken into consideration. ECF 71-1 @ 20:9-22:2. First, that *People v. Dueñas*, 30

6    Cal.App.5th 1157, 1166-69 (2019) (SAC ¶66) is a criminal case, makes no difference.

7    That it holds the state cannot inflict punishment on individuals on the basis of their

8    poverty applies just as well here because defendants *admit* they impound vehicles to

9    deter and inflict punishment.

10        Second, that some California appellate courts disagree with the holding of

11   *Dueñas* does not mean it is no longer good law. Until the California Supreme Court

12   overrules it, this Court may consider it good law.

13        Third, as they did in opposing Plaintiffs' Motion to Amend, defendants again rely

14   on several unpublished district court cases involving *pro se* plaintiffs, for the

15   proposition that the "due process" claim is futile:  *Hallal v. Seroka*, No. 1:18-cv-388,

16   2018 WL 3528709 (E.D. Cal. 2018); *Damiano v. City and County of San Francisco*, no.

17   C 14–02863 LB, 2014 WL 6359763 (N.D. Cal. 2014); and *Tounget v. City of Hemet*,

18   2011 WL 13143671 (C.D. Cal. 2011). ECF 71-1 @ 21:10-22:2. None say anything

19   about Plaintiff's theory or claim. *Hallal* had to do with a plaintiff who bought a car from

20   its owner and then received a notice from the DMV that if she wanted to register the

21   vehicle, she had to pay its old tickets. In finding that the plaintiff has not stated a claim

22   for a § 1983 violation, the court's order explains the process whereby the plaintiff can

23   contest parking tickets and states it must be done in state court, not federal court. *Hallal*,

24   2018 WL 3528709 at *3. Similarly, in *Damiano*, even though it was not clear what the

25   plaintiff was claiming, the court says he could not contest the process of contesting

26

27        [14] *Kokesh v. Securities and Exchange Commission*, 137 S.Ct. 1635, 1643 (2017)
     (Deterrence is punishment); *United States v. Bajakajian*, 524 U.S. 321, 329 (1998)
28   (same).

parking tickets in federal court. 2014 WL 6359763 at *3. In *Tounget*, the plaintiff's claimed due process claim was that he should have been given notice before his vehicles were towed. 2011 WL 13143671 at *4. The court disagreed, citing *Scofield v. City of Hillsborough*, 862 F.2d 759 (9th Cir. 1988), which has no application here.

Lastly, defendants' claim they do take into account people's ability to pay, ECF 71-1 @ 22:3-18, also fails. Taking the facts stated in the SAC as true, defendants did nothing for Plaintiff Fitzpatrick when she explained and provided documentation of her inability to pay. SAC ¶18. Moreover, even if the Court could consider the CAPP and installment payment programs defendants discuss, those are only for people who are homeless or are making less than minimum wage; they do not consider all people's inability to pay, as evidenced by what happened to Ms. Fitzpatrick.[15]

## IV. The SAC Alleges Valid Takings Claims.

Initially, defendants' argument turns on their claim that because the vehicle impounds were valid (defendants do not distinguish between justification for the initial seizure versus the subsequent impound) the Takings claim is unsupportable. ECF 71-1 @ 16:22-17:3. Defendants' arguments fails because as discussed above, the impounds (whether initial seizure or refusing to release the vehicle) violated the Fourth Amendment and due process.

Defendants' backup claim – there can be no Takings Claim unless the property was seized for a public use (ECF 71-1 @ 17:4-14) – was already rejected by this Court. ECF 197 filed 7/14/20 @ pp. 13-14 (filed in *Brewster v. City of Los Angeles*, 5:14-cv-2257 JGB).

An additional authority here is the June 22, 2021 Supreme Court opinion in *Cedar Point Nursery v. Hassid*, 594 U. S. ___, 141 S.Ct. 2063 (2021). *Cedar Point*

---

[15] According to the Federal Register by the United States Department of Health and Human Services, the Poverty Guidelines for 2022 for a one-person household is an annual income of $13,590. Even at 150% of that ($20,385), a person would only qualify if they make $9.80 per hour, well below the minimum wage of $16.04 in the City of Los Angeles.

confirms this Court made the right call in its previous rulings upholding the Takings Claim. In *Cedar Point Nursery*, the Court analyzed a California statute that required farms to allow union organizers onto their property at certain times of the day for some limited number of hours per year, finding it amounted to a *per se* taking requiring compensation. *Id.* at Slip Opinion pp. 10-11: "The upshot of this line of precedent is that government authorized invasions of property-whether by plane, boat, cable, or beachcomber-are physical takings requiring just compensation. . . . It is therefore a per se physical taking under our precedents. There was no absolute requirement of "public use" because even a temporary taking or that the government does not assert any formal title to property, requires compensation: "The government commits a physical taking when it uses its power of eminent domain to formally condemn property. [Citations omitted] The same is true when the government physically takes possession of property without acquiring title to it." *Id.* at 5. Hence, the Court concluded: "the government can commit a physical taking either by appropriating property through a condemnation proceeding or by simply 'enter(ing) into physical possession of property without authority of a court order [citation omitted].' "*Id.* at 13. "Any other result would allow the government to appropriate private property without just compensation so long as it avoids formal condemnation." *Id.* at 14.

**V.  The SAC Adequately Alleges Entity Liability.**

The defendants' argument there is no City policy (*i.e.* that they enforce *only* state law) is contrary to the SAC's allegations, see SAC ¶¶13-15. Furthermore,  its is disingenuous for defendants to argue it is the State's fault, not defendants, that Plaintiffs cannot register their vehicles, and that defendants have nothing to do with DMV registration. ECF 71-1 @ 19:5-20:2. Defendants' enforcement of § 22651(i) and (o) is discretionary. Since the DMV imposed the hold on registration at the *City's* direction, SAC ¶¶25, 29, while the City exercised its discretion to impound under subdivisions (i) or (o) in order to enforce collection of alleged debt owed to the City, the City is liable. *Malley v. Briggs*, 475 U.S. 335, 345 n.7 (1986) (rejecting an argument that "the judge's

decision to issue the warrant breaks the causal chain between the application for the warrant and the improvident arrest"); *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1089 (9th Cir. 2011) (In § 1983 litigation, a court applies "traditional tort law principles" of causation for determining if a defendant's wrongful act caused injury to the plaintiff.); *see also* this Court's Order filed 7/29/19 (ECF 171) in *Brewster v. City of Los Angeles*, 5:14-cv-2257 JGB, @ pp. 7-10 (City is liable for its policy of enforcing C.V.C. § 14602.6 thirty day vehicle impounds).

## VI.   The SAC Properly Names the City, LAPD and LADOT as Separate Defendants.

Plaintiff may name the City of Los Angeles, the Los Angeles Department of Transportation ("LADOT") and the Los Angeles Police Department ("LAPD") as separate defendants because the Ninth Circuit holds such agencies are separately suable entities. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 624 n.2 (9th Cir. 1988) ("Municipal police departments are "public entities" under California law and, hence, can be sued in federal court for alleged civil rights violations.").

## VII.  The Removal of the "Legally Parked" Allegation.

Defendants claim that because the SAC drops the allegation that Ms. Fitzpatrick's vehicle was "legally" parked at the time of the initial seizure, that somehow shows that towing her car was justified.. ECF 71-1 @ 14:11-16. Plaintiff Fitzpatrick no longer alleges "legally" parked because it is possible (though unlikely) that there was a *de minimus* parking violation. But as this Court found in ruling on defendants' motion for sanctions, a "reasonable jury could find that Ms. Fitzpatrick's vehicle was parked lawfully in light of the incomplete red zone paint, the "no parking 8 a.m. to 11 a.m." on Fridays sign, and the fact her car was not parked in the continuous red zone area." ECF 60, 4/8/22 Order @ page 4. Furthermore, given the allegations that however Ms. Fitzpatrick's vehicle was parked it was *not* posing any kind of traffic hazard, the "legally" parked allegation was unnecessary. *Miranda,* 429 F.3d at 864 ("Whether an impoundment is warranted under this community caretaking doctrine depends on the

location of the vehicle and the police officers' duty to prevent it from creating a hazard to other drivers or being a target for vandalism or theft.").

## VIII.  No Individual Defendant Is Entitled to Qualified Immunity.

Defendants claim Seleta and Hale are entitled to qualified immunity because there is no case law stating it amounts to a constitutional violation to seize a vehicle for multiple unpaid parking tickets. ECF 71-1 @ 24:9-11. Seems like defendants forgot that in their original Motion to Dismiss, they cited *Deligiannis v. City of Anaheim*, 2010 WL 1444538 (C.D. Cal. 2010), which this Court also cited in is 1/20/22 Order denying their Motion. ECF 48 @ 7, fn 4. In *Deligiannis*, in her report the magistrate judge stated that "presumably towing vehicles with multiple unpaid parking citations advances the government's interest of ensuring that drivers do not park illegally and deters owners from violating parking laws."[16] Though that court found qualified immunity since the towing incident happened before the 2005 *Miranda* decision, the court held there *was* a Fourth Amendment violation:

> Here, the car was parked on the street in front of plaintiff's home. Defendants offer no evidence that plaintiff's vehicle jeopardized either the public safety or the efficient movement of vehicular traffic. *Opperman*, 428 U.S. at 368-69. Nor do defendants offer evidence that plaintiff's vehicle was blocking a driveway or crosswalk, that it was a potential target for vandalism or theft, or that they were concerned that plaintiff would move or hide the vehicle to avoid paying the fine. *Caseres*, 533 F.3d at 1075; *Miranda*, 429 F.3d at 864. Although this court does not question that impounding a vehicle for unpaid parking tickets advances the legitimate

---

[16] The decision cited is the report and recommendation of Magistrate Judge Jacqueline Chooljian, which District Judge David O. Carter adopted in 2010 WL 1444535. The granting of qualified immunity was later affirmed by the Ninth Circuit on the grounds that at the time of the incident, which pre-dated *Miranda*, "it was not clearly established whether Deligiannis was entitled to a warrant or a pre-seizure hearing before defendants seized his vehicle under California statute for failure to pay multiple parking tickets." *Deligiannis v. City of Anaheim*, 471 Fed.Appx. 603 (9th Cir. 2012).

00151577.WPD

state interest of deterring drivers from violating parking laws, the Ninth Circuit, as noted above, has rejected the notion that deterrence, by itself, is sufficient to justify a warrantless tow under the caretaker rationale. *Miranda*, 429 F.3d at 866. As also noted above, the Ninth Circuit has rejected the notion that impoundment of a legally parked vehicle is necessary to enforce vehicle regulations. *Id.* at 864 n. 4. Accordingly, Ninth Circuit authority compels this court to conclude that the defendants in issue have failed to demonstrate that the warrantless seizure of plaintiff's vehicle came within the "community caretaking function" or other exception to the warrant requirement of the Fourth Amendment. *Miranda*, 429 F.3d at 862.

2010 WL 1444538 at *7.

Regarding the due process claims, no later than the mid-1970s the law has been clearly established that creditors cannot, in the absence of *any* judicial review, invoke legal process to seize personal property in order to enforce collection of a debt. *See* Part II(E), *supra*.

**IX. Conclusion.**

For the foregoing reasons defendants' motion should be denied.

DATED: July 11, 2022

**DONALD W. COOK**
Attorney for Plaintiffs

By _____
                    Donald W. Cook

00151577.WPD