UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **CV 21-6841 JGB (SPx)** | Date | August 20, 2024 |
|---|---|---|---|
| Title | *Breonnah Fitzpatrick v. City of Los Angeles, et al.* | | |

Present: The Honorable   JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:**   **Order GRANTING-IN-PART Defendants' Motion in Limine to Exclude Plaintiffs' Expert-Based Damages Evidence for Failure to Timely Disclose (Dkt. No. 120)**

Before the Court is Defendants City of Los Angeles and City of Los Angeles Department of Transportation's motion in limine to preclude Plaintiffs Breonnah Fitzpatrick and Christopher Officer from introducing expert-based damages evidence pursuant to Federal Rules of Civil Procedure 26 and 37.[1] ("Motion," Dkt. No. 120.) The Court determines the Motion is appropriate for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After considering all papers filed in support of and in opposition to the Motion, the Court **GRANTS-IN-PART** the Motion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

This case concerns Defendants' policy of impounding vehicles and the effect of that policy on Plaintiffs' vehicles, both of which were impounded. The full procedural history of this matter is described at length in previous orders. (See "MSJ Order," Dkt No. 130; "Class Certification Order," Dkt. No. 131.) Here, the Court only details the procedural history directly relevant to the Motion.

The operative complaint in this matter was filed on December 2, 2022 by Plaintiffs Breonnah Fitzpatrick and Christopher Officer against Defendants City of Los Angeles, the City

---

[1] All subsequent references to "Rule" refer to the Federal Rules of Civil Procedure, unless otherwise noted.

of Los Angeles Department of Transportation ("LADOT"), and Does 1 through 10.  ("4AC," Dkt. No. 94.)  The 4AC alleges eight causes of action: (1) 42 U.S.C. § 1983 injunctive relief, also brought under Article I § 13 of the California Constitution; (2) Fourth Amendment violation under 42 U.S.C. § 1983; (3) Fifth Amendment violation (unlawful taking) violation under 42 U.S.C. § 1983; (4) violation of Cal. Civ. Code § 52.1 (Bane Act); (5) violation of Cal. Const. Art. I § 13; (6) violation of Due Process under 42 U.S.C. § 1983; (7) violation of Equal Protection under 42 U.S.C. § 1983; and (8) Eighth Amendment (excessive fines clause) violation under 42 U.S.C. § 1983.  (Id.)

On March 7, 2023, the Court approved the parties' joint stipulation and continued the deadline for the parties to exchange initial expert disclosures to March 12, 2024 and the discovery cutoff to April 12, 2024.  (Dkt. Nos. 107, 108.)  However, the Court issued a notice explaining that it approved the stipulation "with some hesitation and on the understanding that the parties will continue to meaningfully advance the litigation in timely fashion."  ("Notice," Dkt. No. 109 at 1.)  The Court continued: "The bottom line is that the Court sets a one-year timetable in between the initial scheduling conference and the jury trial for good reason: it encourages the parties to advance the case diligently and efficiently toward resolution."  (Id. at 2.)  The Court cautioned "that it is unlikely to grant future continuances."  (Id.)

On March 12, 2024—the new date for initial expert disclosures, including the exchange of expert reports—Plaintiffs' counsel asked Defendants for a one-week extension, to which Defendants agreed.  (Goss Decl. ¶ 3; id. at Ex. A.)  On March 15, 2024, Plaintiffs' counsel complained to Defendants that their 2022 discovery responses were false based on deposition testimony taken in other cases in 2014 and 2016 and Defendants' response to a 2021 California Public Records Request ("CPRA").  (Goss Decl. ¶ 4; id. at Ex. B.)  Plaintiffs' counsel also noticed a deposition for Defendants to produce an agent to testify on their collection and maintenance of data.  (Cook Decl. ¶ 5.)  On March 19, 2024—the extended expert disclosure deadline—Plaintiffs' counsel provided the names of three experts, stated they would "perform the same analysis" as they did in a related case against Defendants, but claimed the experts could not complete their analysis because Defendants had "wrongfully withheld computer data" from Plaintiffs.  (Goss Decl. ¶ 5; id. at Ex. C.)  On March 20, 2024, the parties' counsel met and conferred regarding Plaintiffs' claims of misconduct; after this meeting, Plaintiffs' counsel wrote to Defendants alleging they were engaged in "serious" discovery violations which were "preventing Plaintiffs from completing their Rule 26 expert reports for their three experts."  (Goss Decl. ¶ 6; id. at Ex. D.)  Plaintiffs' counsel believed that Defendants had produced data as a PDF printout rather than in its native form as electronically-stored data.  (See id.)

On March 22, 2024, Defendants responded and explained that, contrary to Plaintiffs' counsel's belief, they had previously produced the documents in native format.  (Goss Decl. ¶ 7; id. at Exs. E, F.)  On March 26, 2024, Plaintiffs' counsel apologized for his error, but continued to argue that he had "evidence conclusively disproving the City's claims that it does not have access to VIIC data."  (Goss Decl. ¶ 8; id. at Ex. G.)  Plaintiffs' counsel referenced columns present on a document he claimed Defendants produced in response to a CPRA request and suggested that the information in those columns proved Defendants had access to the sought-

after data.  (Id.)  On March 28, 2024, Defendants wrote to Plaintiffs' counsel stating that Plaintiffs' counsel's office had manipulated data in the document by adding the columns counsel now claimed demonstrated Defendants' discovery misconduct.  (Goss Decl. ¶ 9; id. at Ex. H.)  On March 29, 2024, Plaintiffs' counsel sent a letter to Defendants accusing them of discovery misconduct and threatening to file a discovery motion and seek ex parte relief on April 1, 2024 to secure an order extending the discovery cut-off and the deadline for designating experts.  (Goss Decl. ¶ 10; id. at Ex. I.)  On April 1, 2024, the parties' counsel met and conferred, and Plaintiffs admitted that his claims of discovery misconduct were wrong, and Plaintiffs had not timely disclosed their expert reports because he had mistakenly believed he had all data necessary for their reports.  (Goss Decl. ¶ 11.)

On April 18, 2024, Plaintiffs' counsel provided Defendants with Plaintiffs' expert damages reports.  (Goss Decl. ¶ 12; id. at Ex. J.)  The next day, Plaintiffs' counsel provided spreadsheets, which he said was the data relied upon by the experts in arriving at their conclusions.  (Goss Decl. ¶ 13.)

On April 22, 2024, Plaintiffs' counsel sent additional correspondence to Defendants which admitted his claims of discovery misconduct were false and that Plaintiffs' expert reports were untimely because of his errors.  (Goss Decl. ¶ 14; id. at Ex. L.)  Plaintiffs' counsel stated that the "late filing [sic] occurred because I had inadvertently saved the City-produced tow data in another computer folder; hence, because I believed (incorrectly as it turned out) that my office did not have the City data I was unable to have completed expert reports until April 18."  (Id.)  Plaintiffs' counsel further stated that he would move for relief for the untimely expert disclosures.  (Id.)  Counsel never brought such a motion.

On May 20, 2024, Defendants filed a motion in limine to preclude Plaintiffs' damages experts for failure to timely disclose its expert reports.  (Motion.)  In support of the Motion, Defendants filed a declaration of attorney Jeffrey Gloss ("Gloss Decl.," Dkt. No. 120-1) and Exhibits A through L (Dkt. Nos. 120-2–120-13).  On May 28, 2024, Plaintiffs opposed.  ("Opposition," Dkt. No. 127.)  In support of the Opposition, Plaintiffs filed a declaration of attorney Donald W. Cook.  ("Cook Decl.," Dkt. No. 127 at 8–11) and Exhibits A through E (id. at 13–26).

## II.   LEGAL STANDARD

### A.  Motions in Limine

Motions in limine are a well-recognized judicial practice based in "the court's inherent power to manage the course of trials."  Luce v. United States, 469 U.S. 38, 41 n.4 (1984).  Regardless of a court's initial decision on a motion in limine, a court may revisit the issue at trial.  See Fed. R. Evid. 103 advisory committee's note to 2000 amendment ("Even where the court's ruling is definitive, nothing in the amendment prohibits the court from revisiting its decision when the evidence is to be offered."); see also Luce, 469 U.S. at 41–42 ("[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion,

to alter a previous in limine ruling."). "[A] ruling on a motion in limine is essentially a preliminary opinion that falls entirely within the discretion of the district court." United States v. Bensimon, 172 F.3d 1121, 1127 (9th Cir. 1999).

### B. Rules 26 and 37

Rule 26(a)(2) requires a party to timely disclose a written report of a witness "if the witness is one retained or specially employed to provide expert testimony in the case . . . ." Goodman v. Staples The Off. Superstore, LLC, 644 F.3d 817, 819 (9th Cir. 2011). If a party fails to provide information or identify a witness as required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); Yeti v. Deckers Outdoor Corp., 259 F.3d 1101, 1106 (9th Cir. 2001). "[T]he burden is on the party facing sanctions to prove harmlessness" and substantial justification. Yeti, 259 F.3d at 1107.

### III. DISCUSSION

Defendants move in limine to exclude testimony by Plaintiffs' damages experts Michael Meyer, Chris Mitrision, and Dwight W. Cook for failure to timely disclose their expert reports in violation of Rules 26(a)(2) and 37(c)(1). (Motion.) The burden is on Plaintiffs to demonstrate that their failure to comply with Rule 26(a) was substantially justified or harmless. Goodman, 644 F.3d at 827. Plaintiffs concede that the expert reports were untimely, but argue that the late filing was harmless, and as to one of the three experts—Dwight W. Cook—that his testimony is not expert testimony and thus need not be excluded pursuant to Rule 37(c)(1). (Opposition at 4.) For the reasons below, the Court **GRANTS-IN-PART** the Motion.

### A. Substantially Justified

Plaintiffs admit they served the initial expert reports "just over four wees late," and that the untimeliness "occurred because of an inadvertent error by Plaintiff's [sic] counsel in saving the LADOT computer data in the wrong location." (Opposition at 4 (citing Cook Decl. ¶¶ 4-7).) Plaintiffs argue that "[t]he error was compounded by defense counsel's failure or refusal to promptly respond to Plaintiff's [sic] counsel's March 15, 2024 letter, then promising to produce a F.R.Cv.P. 30(b)(6) deponent before declining to do so" and by "the need to combine two different data sets." (Opposition at 4.) However, Plaintiffs do not argue that the error was substantially justified. (See Opposition.)

### B. Harmless

Plaintiffs argue that the untimely service of their experts' reports was harmless because "by March 19, 2024, through counsel Plaintiffs disclosed to defendants both the identity of their experts and what they would testify to, including their methodology and data sources." (Opposition at 4.) According to Plaintiffs, because they informed Defendants that (1) they were designating the same experts as used in a related matter, Lamya Brewster v. City of Los Angeles,

et al., No. EDCV 14-2257-JGB (SPx), and (2) that those experts would "perform the same analysis . . . as they did in Brewster," Defendants did not suffer any harm due to untimely service. (Opposition at 5.) The Court appreciates that Defendants were harmed less than they otherwise would have been given the parties' counsel's knowledge of the expert reports submitted in the Brewster matter. But Defendants were still deprived of the experts' specific conclusions about the facts alleged in *this* case. And as Plaintiffs' counsel admits in his declaration, [t]here is . . . an important difference regarding the source computer data for the impounded vehicles at issue" in this case as compared to Brewster, because there are two sets of data at issue in the instant matter. (Cook Decl. ¶¶ 3, 9.) Moreover, Defendants were not provided with reports until after the discovery deadline had passed, meaning that they were required to move for relief to depose any of the experts based on their reports. As explained above, that request would not have been taken kindly by the Court given its explicit admonition to the parties in 2023 that it was unlikely to grant future requests for continuance. Even if Defendants had requested, and the Court granted, an extension to allow the deposition of experts, which would have occurred in close proximity to trial in this matter. Contrary to Plaintiffs' argument, their failure to timely serve expert reports harmed Defendants' ability to defend themselves in this case.

**C. Dwight W. Cook**

Plaintiffs' final argument against exclusion is specific to one of the purported experts, Dwight W. Cook. (Opposition at 6.) As Plaintiffs admit, Cook was originally identified as an expert. But Plaintiffs contend that Cook's testimony is not that of an expert, but is instead merely summary in nature:

> Although identified as a [sic] initial retained expert, Dwight W. Cook is in really [sic] a witness who combined two different computer data sets and performed compilations on the electronic data obtained from the two data sets already in defendants' actual or constructive possession (VIIC data and LADOT data). He is thus doing the same service he did in Brewster – summarizing the contents of voluminous records to prove their contents. This, Plaintiffs submit is not expert testimony because he is not offering an "opinion"; he is providing numbers using a data program (Microsoft Excel) for the calculations. Hence, his expected testimony "is exactly what Federal Rule of Evidence 1006 (Summaries to Prove Content) was intended for."

(Id. (internal citations omitted).)

The Court does not have before it Cook's report or testimony. All it has is Plaintiffs' counsel's declaration, in which he avers that Cook merely combined two data sets into one data set for use by the two damages experts. (See Cook Decl. ¶¶ 3, 9.) The Court agrees that based on this description, Cook's work "is exactly what Federal Rule of Evidence 1006 (Summaries to Prove Content) was intended for. It allows a proponent of evidence to use a summary, chart or calculation 'to prove the content of voluminous

writings' that 'cannot be conveniently examined in court.'" <u>Brewster v. City of Los Angeles</u>, 672 F. Supp. 3d 872, 1007 (C.D. Cal. 2023) (quoting Fed. R. Evid. 1006) (holding that similar work done by Cook was admissible because it was summary in nature).  In other words, Cook's testimony appears not to be expert testimony at all, and thus is not subject to the Rule 26 disclosure requirements discussed above.  However, if Cook's report or testimony exceeds the scope of Federal Rule of Evidence 1006 and offers any opinion about the data beyond mere summarization, such testimony is excluded under Rule 37(c) in accordance with the findings above.

In sum, Plaintiffs have failed to demonstrate substantial justification or harmlessness, and their two damages experts are thus excluded under Rule 37(c).  However, the work of Dwight Cook is not excluded insofar as it reflects mere compilation and summary of the data sets identified in Plaintiffs' Opposition.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS-IN-PART** Defendants' Motion.

**IT IS SO ORDERED.**